LLOYD'S PLAN, INC., Appellee,

v.

Judith A. BROWN, Appellant.

No. 61085.

Supreme Court of Iowa.

July 26, 1978.

Harold C. Lounsberry, Davenport, for appellant.

No appearance for appellee.

Considered by MOORE, C. J., and RAWLINGS, UHLENHOPP, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

This appeal involves issues relating to a creditor's right to a deficiency judgment after repossession and sale of collateral. The trial court entered judgment for plaintiff Lloyd's Plan, Inc., in the amount of $3054.08 for the alleged deficiency owed by defendant Judith A. Brown on a note and security agreement. Defendant contends the court erred because (1) plaintiff's petition and computation of the alleged deficiency did not conform with statute, (2) the

notice to cure was inadequate, (3) she was not given reasonable notice of the proposed sale of collateral, and (4) her counterclaim should not have been dismissed. We affirm the trial court.

The case was tried to the court at law. Therefore the trial court's findings of fact have the force of a jury verdict.

Most of the facts are undisputed. Where disputes exist, the court found plaintiff's version of events to be credible rather than defendant's. Because credibility is for the trier of fact to decide, we have no basis to interfere with the trial court's findings of fact.

Defendant had financed a 1970 Chevrolet automobile with plaintiff in 1973. In August 1975 she traded that car in on a 1974 Plymouth and borrowed more money from plaintiff to finance that transaction. She paid $3595 for the Plymouth. On August 9, 1975, she executed a note and security agreement for a loan of $5531.36 and finance charge of $2100.64, making a total debt of $7632.00. It was payable in 36 monthly installments of $212, commencing September 9, 1975. The automobile and household goods were collateral for the debt.

Only four payments were made. On February 5, 1976, plaintiff mailed a notice to cure default to defendant. The notice was addressed to her at 625 Boston Drive in Davenport, an address which plaintiff obtained from defendant's employer. The notice informed defendant she was $420.75 in default, including $202.53 owed for January, $212 for February, and late charges of $4.22 She was given until February 25, 1976, to cure the default.

In a conversation with plaintiff's manager in mid-February, defendant acknowledged having received the notice. At that time she lived in a trailer court with a rural Davenport address.

When defendant did not pay the amount in default, plaintiff's manager obtained an ignition key for the Plymouth from a dealer and repossessed it. He removed it from the street adjacent to defendant's trailer home.

On March 16, 1976, plaintiff sent a letter by certified mail to defendant at her trailer court address, telling her that unless she made the necessary arrangements to redeem her car before March 27, it would be "sold to the highest bidder" and she would be charged with the deficiency. This letter was returned to plaintiff marked "unclaimed". It showed postal authorities had given defendant two notices regarding the mail and, when she did not respond, returned the letter to plaintiff on April 3, 1976. Plaintiff's manager testified he left messages for defendant which she ignored. He also said he made at least two trips to her trailer home, but she would not answer the door.

Plaintiff parked the car on its lot with a "for sale" sign on it. Offers of $2475 and $2895 were received, but the car was sold in April 1976 to plaintiff's manager's secretary for $3400. This price was $195 less than defendant paid for the car and exceeded its retail book value.

The $3400 was credited against defendant's debt. This left a deficiency of $3387.25 on the total obligation. Reducing this by the amount of rebate due upon prepayment, the deficiency at the time of trial was $3054.08, the amount for which the trial court awarded judgment to plaintiff.

Defendant had asserted a counterclaim based on allegations of lack of compliance with statutory notice requirements and trespass in repossessing the car. The trial court dismissed the counterclaim on the basis of its findings of fact.

I. *Sufficiency of plaintiff's petition and proof.* Defendant contends plaintiff's petition did not conform with § 537.5114(1), The Code, which specifies what a creditor's petition must contain. She also contends plaintiff's proof did not allow her the prepayment rebate she was entitled to under § 537.2510, The Code.

■ A. *The petition.* Contents of a creditor's petition are delineated in § 537.-5114(1) as follows:

In an action brought by a creditor against a consumer arising from a consumer credit transaction, the complaint shall allege the facts of the consumer's default, the amount to which the creditor is entitled, and an indication of how that amount was determined.

Plaintiff's petition did not conform with the statute because it did not allege the facts of the alleged default or the manner in which the claimed deficiency was determined.

However, defendant did not raise any question about the sufficiency of the allegations of the petition at any time in the trial court. She may not do so for the first time here. See *Kitchen v. Stockman National Life Ins. Co.,* 192 N.W.2d 796, 803 (Iowa 1971); *McCuddin v. Dickinson,* 230 Iowa 1141, 1143, 300 N.W. 308, 309 (1941).

■ B. *Proof of the prepayment rebate.* When maturity of a consumer credit obligation is accelerated because of default, the debtor is entitled to the same rebate as upon prepayment. This requirement is based on § 537.2510(6), The Code, which provides:

> If the maturity is accelerated for any reason and judgment is obtained, the consumer is entitled to the same rebate as if payment had been made on the date maturity is accelerated.

Under this provision defendant was entitled to a prepayment rebate on the amount remaining on her obligation. Thus plaintiff was not entitled to judgment for the full deficiency of $3387.25 but only for the amount necessary to prepay the deficiency as of the date of judgment.

Plaintiff's manager testified the prepayment rebate would reduce the deficiency to $3054.08. He said he obtained that figure from a computer. Defense counsel objected to the evidence on the general ground of lack of foundation.

This objection was inadequate to preserve error. A party objecting to evidence on foundation grounds must point out in what particular or particulars the foundation is deficient so the adversary may seek to remedy the defect, if possible. *State v. Entsminger,* 160 N.W.2d 480, 482–483 (Iowa 1968).

The record shows plaintiff's manager did try to explain how prepayment rebates are computed under the consumer credit code, although his explanation was not a model of lucidity.

The computation is governed by § 537.-2510, The Code. The purpose of the rebate is to credit the prepaying consumer with unearned finance charges. Because the transaction has been precomputed on the assumption the loan will be repaid over the full term, the total finance charge, which consists primarily of interest, is chargeable to that period. Shortening the term requires reduction of the total finance charge.

Under § 537.2510, two alternative means are provided for computing the amount of unearned finance charge at the time of prepayment. § 537.2510(1). One means involves a calculation of the unearned portion of the finance charge, and the other involves redetermination of the earned finance charge. Each means is based on the "actuarial method" which is defined in § 537.1301(1) as follows:

> *"Actuarial method"* means the method of allocating payments made on a debt between the amount financed and the finance charge, pursuant to which a payment is applied first to the accumulated finance charge and any remainder is subtracted from, or any deficiency is added to, the unpaid balance of the amount financed. * * *

Thus the finance charge is computed on the unpaid balance at any given time. When the periodic payments are in equal amounts, the portion of each payment allocable to the finance charge becomes proportionately less over the term of the loan.

Because the finance charge attributable to each payment is different, the calculation is often made through use of federal reserve system tables or with computer assistance. However, it may be objectively verified through use of a standard formula. See CCH Installment Credit Guide, No. 198, Appendix C, at 95 (March 15, 1969). When proper objection is made, creditors seeking

a deficiency judgment must be prepared to demonstrate the accuracy of their computation of prepayment rebate.

Defendant failed to preserve error in this case.

II. *The notice to cure.* In most circumstances a creditor is barred from enforcing his rights upon consumer default unless he first gives the consumer a notice of right to cure. See § 537.5110. The parties agree defendant was entitled to such notice in this case.

The form of notice to cure is provided in § 537.5111. Defendant contends plaintiff violated § 537.5111(3) which requires the notice to be given to the consumer "at his residence as defined in section 537.1201 subsection 4." The definition of "residence" in § 537.1201(4) is as follows:

> For the purposes of this chapter, the residence of a buyer, lessee or debtor is the address given by him as his residence in a writing signed by him in connection with a transaction until he notifies the person extending credit of a different address as his residence, and it is then the different address.

Defendant moved at least twice after entering the transaction with plaintiff. The address she gave in writing in executing the security agreement was different from the address which plaintiff had obtained from defendant's employer and to which plaintiff sent the notice to cure. Although the address was correct, defendant had not furnished it to plaintiff, and she testified she did not receive the notice.

■ However, the trial court found she did receive it. Therefore the issue is whether the court erred in holding the notice was valid in these circumstances.

This issue does not appear to have been decided under the uniform consumer credit code. However, in an analogous case where a contract contained a similar requirement and the notice was, as here, actually received although sent to a different address, the court held it was effective. See *U. S. Broadcasting Co. v. Nat. Broadcasting Co.,* 439 F.Supp. 8, 10 (D.Mass.1977). See also *First Nat. Bank v. Oklahoma Sav. & Loan Bd.,* 569 P.2d 993, 997 (Okl.1977). We reach the same conclusion here. Because defendant actually received it, we do not find she suffered any prejudice from the sending of the notice to an undesignated but correct address.

Defendant also asserts the delinquency amount alleged in the notice was wrong. She testified the February payment would not have been overdue until four days later than the date of the notice. Plaintiff's manager said the payment date had been changed to the first of the month at defendant's request, and the trial court believed him. We are bound by this finding. We have no occasion to decide what the effect would be if the notice overstated the amount of the delinquency.

III. *Notice of sale of the collateral.* In alleging plaintiff did not give required notice of the sale of the automobile, defendant relies on § 554.9504(3), which provides in relevant part:

> Unless collateral is perishable or threatens to decline speedily in value or is a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale.

This provision is made applicable to disposition of repossessed collateral by § 537.-5103(2), The Code. Defendant asserts the notice mailed March 16 was deficient because it purported to notify her of a private rather than public sale and because it was not sent to the address shown on the security agreement.

We have held that noncompliance with the notice requirement of § 554.9504(3) defeats the right to a deficiency judgment. *Herman Ford-Mercury, Inc. v. Betts,* 251 N.W.2d 492, 496 (Iowa 1977); *Federal Deposit Ins. Corp. v. Farrar,* 231 N.W.2d 602, 605 (Iowa 1975).

We do not agree the sale was public. The fact the car was displayed for sale in a public place did not make the sale itself public. Private offers were taken and the vehicle was sold privately. The essence of a public sale is that the public is not only invited to attend and and bid but also is informed when and where the sale is to be held. See *In re Bishop*, 482 F.2d 381, 384–385 (4 Cir. 1973); 2 G. Gilmore, Security Interests in Personal Property 1242 (1965); Restatement of Security § 48, comment c at 139–140 (1941). We find no merit in defendant's contention that the notice should have notified her of a public rather than a private sale.

Furthermore, we do not agree the notice was sent to the wrong address. Defendant admits it was her correct address at the time. The restriction of § 537.5111(3) relating to sending the notice to cure does not apply to § 554.9504(3) governing notice of disposition of collateral. Notice is given within the meaning of § 554.9504(3) when the creditor "takes such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it." § 554.-1201(26), The Code.

Plaintiff's evidence, which was believed by the trial court, was that it mailed the notice to defendant's correct address by certified mail. She was given two notices by postal authorities in an effort to deliver it to her. It was then returned as "unclaimed" to plaintiff. Plaintiff then attempted unsuccessfully through additional messages and personal visits to notify defendant of the impending sale. In these circumstances, we hold plaintiff took such reasonable steps as are required by §§ 554.-1201(26) and 554.9504(3). See *Hudspeth Motors, Inc. v. Wilkinson*, 238 Ark. 410, 382 S.W.2d 191 (1964); cf. *In re Carter*, 511 F.2d 1203 (9 Cir. 1975); *Geohagan v. Commercial Credit Corp.*, 130 Ga.App. 828, 204 S.E.2d 784 (1974).

IV. *Dismissal of the counterclaim.* Defendant's counterclaim was dismissed for failure of proof. We have already answered her claims regarding the notices. Her

separate claim of trespass rested largely on the credibility of defendant's testimony, contradicted by plaintiff's manager and another employee. We do not decide whether plaintiff's right of repossession would have been affected if the automobile had been seized from defendant's driveway. See §§ 537.5103(2), 554.9503, The Code. Under this record we are unable to hold the trial court was compelled, as a matter of law, to find defendant proved the allegations of her counterclaim.

We find no reversible error.

AFFIRMED.