(729 P.2d 1252)
No. 58,960

THE GARDEN NATIONAL BANK OF GARDEN CITY, KANSAS, *Appellee*, v. MARY CADA, also known as MARY BANDA, *et al.*, *Appellant.*

Opinion filed December 18, 1986.

*Gerald C. Golden,* of Meade, for appellant.

*Gerald O. Schultz,* and *Douglas M. Crotty III,* of Corley, Crotty & Assoc., Chtd., of Garden City, for appellee.

Before DAVIS, P.J., C. PHILLIP ALDRICH, District Judge assigned, and BARRY A. BENNINGTON, District Judge, assigned.

DAVIS, J.: The defendant, Mary Cada, appeals from a judgment granting plaintiff, Garden National Bank of Garden City, Kansas, a deficiency judgment following her default on a car loan and ordering a mortgage on real property pledged by her to secure the loan foreclosed. Before seeking judgment and foreclosure of the mortgage, the bank repossessed and sold the car at a public

auction. Cada also appeals from the trial court's denial of a motion under K.S.A. 60-260(b)(4).

In November 1980, Mary Cada borrowed $8,664.70 from Garden National Bank to buy a 1981 Pontiac Firebird. On December 1 she signed a promissory note, disclosure statement, and security agreement, pledging the car as collateral. Cada failed to make any payments on the note and on February 18, 1981, the parties executed a renewal note, calling for monthly payments of $313. Both notes provided that the loan would be subject to the Kansas Uniform Consumer Credit Code, K.S.A. 16a-1-101 *et seq.*

Cada did not make a payment on the renewal note. On March 12 the bank sent Cada a "Notice of Right to Cure Default," demanding that she pay $313 by April 1. Cada made no payment, and on April 7 an officer of the bank visited her in Texas and had her sign a "Voluntary Surrender and Authorization to Dispose of Personal Property." In the document she surrendered the car to the bank and authorized the bank "to dispose of this property at public or private sale in the retail or wholesale market *without further notice to us.*" The bank took possession of the car. On April 8, the bank wrote Cada informing her that she could redeem the vehicle "by paying a substantial reduction in the neighborhood of $4,000.00 to $5,000.00 on this loan account within ten days or no later than April 20, 1981."

Despite its demand for a "substantial reduction" in the loan, the bank accepted from Cada payments of $313 on April 21 and April 30 and released the car to her. The trial court found that "[t]hese payments apparently reinstated the note insofar as the plaintiff was concerned."

On June 4, Cada made payments to the bank for May and June, but she made no payments to the bank in July, August, or September. On September 17, 1981, she signed a "Deferral Agreement & Disclosure Statement," in which the bank agreed to defer demand for the July, August, and September sums until November 1. The agreement indicates that no deferral charge was imposed. The bank, however, believed itself to be under-collateralized on the loan and demanded that Cada mortgage real property she owned as consideration for the deferral and for forbearance from foreclosure on the note. Cada executed a mortgage to the bank covering four lots in the City of Deerfield, and

the bank listed the mortgage as security on the February 18, 1981, note.

Cada failed to make the November payment. On November 10 the bank obtained possession of the car.

On February 8, 1982, the bank wrote Cada and informed her that the car would be sold if she did not pay the full balance by February 20. The bank warned her that if a balance remained on the note after sale of the car that it would foreclose on the mortgaged property. Cada received no further notice of sale of the car. On April 6 the bank informed Cada by letter that it had sold the car at the Colorado Auto Auction, Inc. for $3,462 and that she still owed $4,568 on the note. The bank gave her until April 15 to pay the balance and prevent foreclosure of the mortgage.

Cada tendered no payment, and on August 17, 1983, the bank filed suit asking for judgment of $4,568 plus interest and expenses and for foreclosure of the mortgage and sale of the property.

Cada retained the Law Offices of Michael J. Friesen, P.A., to represent her. In an answer signed by Friesen's associate, Phyllis Wendler, Cada generally denied the allegations of the bank's petition, put the bank on "strict proof thereof," and requested "an accounting as to the amount allegedly owed by this defendant."

Friesen conducted little discovery and took no depositions before trial. Near the end of trial, Wendler, Friesen's co-counsel, stood and offered a number of "affirmative defenses" and counterclaims as amendments to the pleadings. These included contentions that the bank failed to give notification of sale as required by K.S.A. 84-9-504(3) and otherwise to dispose of the vehicle in a commercially reasonable manner. When the trial court inquired why these "defenses" had not been raised before trial, Wendler replied that Cada could not afford to pay for depositions and they had no opportunity before trial to examine the bank's witnesses. The trial court denied Cada's motion to amend and entered judgment for the bank on September 5, 1985.

On October 4, 1985, Cada filed a pro se notice of appeal with the district court. Friesen withdrew as Cada's counsel on October 23. On November 27, the court confirmed the sale of Cada's land to the sole bidder, Garden National Bank, for $6,000, leaving a deficiency of $2,289.99.

On October 17, 1985, Cada's new attorney, Gerald C. Golden,

filed a motion to set aside the judgment as void, pursuant to K.S.A. 60-260(b)(4). The court denied the motion in a memorandum decision on November 19, 1985. A journal entry was filed December 2 and on December 4, a second notice of appeal was filed.

At the outset, we note that we are faced with two appeals in the same case. In their briefs and in argument, the parties addressed both the merits of the trial court's initial judgment and the subsequent ruling denying Cada relief under K.S.A. 60-260(b)(4). Therefore, we will consider both the initial judgment and the order denying the 60-260(b)(4) motion. See Supreme Court Rule 2.05 (235 Kan. lxi).

We find no merit in Cada's contention that the judgment for Garden National Bank is void. "[A] judgment is not void [under 60-260(b)(4)] merely because it is erroneous or because some irregularity inhered in its rendition. It is void only if the court that rendered it lacked jurisdiction of the subject matter or of the parties or if the court acted in a manner inconsistent with due process." *Automatic Feeder Co. v. Tobey*, 221 Kan. 17, 21, 558 P.2d 101 (1976). See generally *Neagle v. Brooks*, 203 Kan. 323, 327, 454 P.2d 544 (1969). The record unquestionably demonstrates that the trial court had jurisdiction of the parties and subject matter and afforded the parties due process of law.

Cada argues that the trial court erred by entering judgment for Garden National Bank and ordering the mortgage on the real property foreclosed because the agreement to mortgage the property was not supported by adequate consideration. She also argues that the bank failed to sustain its burden of proving that it disposed of the car following repossession in a commercially reasonable manner as required by K.S.A. 84-9-504(3).

Lack of consideration must be pled as an affirmative defense. K.S.A. 60-208(c); *State ex rel. Ludwick v. Bryant*, 237 Kan. 47, 50, 697 P.2d 858 (1985). Because Cada neither pled nor attempted to plead lack of consideration in the court below, she waived the defense and may not raise it on appeal. See *Timi v. Prescott State Bank*, 220 Kan. 377, 386, 553 P.2d 315 (1976); *Brooker v. Brooker*, 214 Kan. 89, 96-97, 519 P.2d 612 (1974); *Oehme v. Oehme*, 10 Kan. App. 2d 73, 77, 691 P.2d 1325 (1984), *rev. denied* 236 Kan. 876 (1985); *U.S.D. No. 490 v. Celotex Corp.*,

6 Kan. App. 2d 346, 353-54, 629 P.2d 196, *rev. denied* 230 Kan. 819 (1981).

Garden National Bank argues that Cada's contention that it failed to dispose of the car in a commercially reasonable manner also is an affirmative defense and that the trial court did not abuse its discretion by denying her the opportunity to amend her pleadings to allege the defense at trial.

Contrary to the bank's position, Cada did not need to plead failure to dispose of the car in a commercially reasonable manner as an affirmative defense. Rather, the burden of proving that the car was sold in a commercially reasonable manner rested on the bank as part of its case in chief. In *Westgate State Bank v. Clark*, 231 Kan. 81, 642 P.2d 961 (1982), the court stated the rule as follows:

"We must first emphasize the generally accepted rule that, where a secured creditor brings an action for a deficiency judgment after sale of the collateral, the burden of proof as to the commercial reasonableness of the sale is on the plaintiff creditor. [Citation omitted.] . . . This rule is consistent with prior decisions of this court holding that, where a creditor repossesses and disposes of the collateral, it is incumbent on the creditor to account for the collateral sold by him before he can recover a deficiency. *Mannen v. Bailey*, 51 Kan. 442, 32 Pac. 1085 (1893)." 231 Kan. at 91.

See *Medling v. Wecoe Credit Union*, 234 Kan. 852, 863, 678 P.2d 1115 (1984) (applying rule to determination of commercial reasonableness under the UCCC); *Kelley v. Commercial National Bank*, 235 Kan. 45, 51, 678 P.2d 620 (1984).

In the "Promissory Note, Disclosure Statement & Security Agreement," the bank and Cada agreed that the loan would be governed by the UCCC. See K.S.A. 16a-1-109. Under the UCCC, as interpreted by the Kansas Supreme Court, the bank had no right to a deficiency judgment unless it proved that it disposed of the car in a commercially reasonable manner. "In consumer transactions, where there is creditor misbehavior such as failure to sell in a commercially reasonable manner, a claim for a deficiency judgment is absolutely barred." *Westgate State Bank v. Clark*, 231 Kan. at 90. See K.S.A. 16a-5-103(1); *Kelley v. Commercial National Bank*, 235 Kan. at 50-51; *Medling v. Wecoe Credit Union*, 234 Kan. at 861-62.

To satisfy the burden of proving that the collateral was disposed of in a commercially reasonable manner, Garden National Bank had to prove that it sent Cada reasonable notification of the time and place of sale, as required by K.S.A. 84-9-504(3):

"Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification of the time and place of any public sale* or reasonable notification of the time after which any private sale or other intended disposition is to be made *shall be sent* by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale." (Emphasis added.)

See K.S.A. 16a-1-103 (provisions of the Uniform Commercial Code supplement those of the UCCC).

Garden National Bank failed to introduce any evidence that it sent Cada notification of the time and place of public sale of the car. On February 8, 1982, the bank sent Cada a letter informing her that it intended to sell her car after February 20, 1982, but the letter did not mention the Colorado Auto Auction or the date of sale. Because it did not specify the time and place of sale, the February 8 letter did not fulfill the notification requirement of K.S.A. 84-9-504(3). See *Rhodes v. Oaklawn Bank*, 279 Ark. 51, 648 S.W.2d 470 (1983); *Horta v. Flanigan's Enterprises Emp. Credit*, 488 So. 2d 657 (Fla. Dist. App. 1986); *Wippert v. Blackfeet Tribe*, ____ Mont. _____, 695 P.2d 461 (1985); *Havelock Bank v. McArthur*, 220 Neb. 364, 370 N.W.2d 116 (1985); *Benton-Lincoln Credit Serv. v. Giffin*, 48 Or. App. 559, 617 P.2d 662 (1980).

In its petition the bank relied on the "Voluntary Surrender and Authorization to Dispose of Personal Property," in which Cada waived her right to further notification of sale. K.S.A. 84-9-504(3) provides that a debtor can sign *"after default* a statement renouncing or modifying his right to notification of sale." (Emphasis added.) Cada signed the "Voluntary Surrender" on April 7, 1981, following her default on March 1, 1981. As the trial court found, however, she cured this default in April 1981. "Cure restores the consumer to his rights under the agreement *as though the defaults had not occurred."* K.S.A. 16a-5-111(2) (emphasis added.) Thus, Cada's renunciation occurred *before* the November 1 default and did not constitute an effective waiver of her right to notification of sale under 84-9-504(3).

Finally, a public auto auction does not fall into the exemption from the notification requirement for collateral "of a type customarily sold on a recognized market." K.S.A. 84-9-504(3). See *Norton v. Nat. Bank of Commerce*, 240 Ark. 143, 146, 398 S.W.2d 538 (1966); *Comm. Mgmt. Assn. v. Tousley*, 32 Colo. App. 33, 36, 505 P.2d 1314 (1973); *Horta v. Flanigan's Enterprises Emp.*

*Credit*, 488 So. 2d at 658 n.1; *Maryland Nat'l Bank v. Wathen*, 288 Md. 119, 122, 414 A.2d 1261 (1980); K.S.A. 84-9-504(3), Kansas Comment 1983, *Subsection (3)(7)* ("The courts have generally limited the 'recognized market' exception to securities or commodities for which standard price quotations act as a safeguard.").

Garden National Bank did not carry its burden of proving that it sent Cada notification of the time and place of public sale of her car and, thus, failed to prove that it disposed of the car in a commercially reasonable manner. The bank's failure to dispose of the car in a commercially reasonable manner absolutely bars it from claiming any deficiency on the note signed by Cada. The trial court erred by granting the bank a deficiency judgment on the February 18, 1981, note and by foreclosing the real estate mortgage.

Reversed and remanded for proceedings consistent with this opinion.