No. 58,960

THE GARDEN NATIONAL BANK OF GARDEN CITY, KANSAS, *Appellee*, v. MARY CADA, also known as MARY BANDA, et al., *Appellants*.

(738 P.2d 429)

Opinion filed June 12, 1987.

*Gerald C. Golden*, of Meade, argued the cause and was on the brief for appellants.

*Douglas M. Crotty III*, of Corley, Crotty & Assoc., Chtd., of Garden City, argued the cause, and *Gerald O. Schultz*, of the same firm, was with him on the brief for appellee.

*Anne L. Baker*, of Eidson, Lewis, Porter & Haynes, of Topeka, was on the brief *amicus curiae*, for Kansas Bankers Association.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal by Mary Cada from a judgment in favor of The Garden National Bank of Garden City, Kansas, (Bank) foreclosing a real estate mortgage and granting the Bank a deficiency judgment following sale of the real property. The Court of Appeals reversed the judgment of the district court (*Garden Nat'l Bank v. Cada*, 11 Kan. App. 2d 562, 729 P.2d 1252 [1986]). We granted review on a petition by the Bank.

The facts are fully set forth in the Court of Appeals opinion and

only such facts as are necessary to our decision herein will be stated. Following default on an automobile loan Mrs. Cada obtained from the Bank, the parties entered into a deferral agreement extending the time in which to resume payments upon the loan. As consideration for the extension she executed a real estate mortgage on property in Deerfield, Kansas, to the Bank as additional security for the loan. Thereafter, she again defaulted in payments due on the loan and after the Bank gained possession of the automobile, it was sold at the Colorado Auto Auction in Denver, Colorado. As a substantial balance remained on the note following the sale, the Bank instituted foreclosure proceedings on the real property mortgage and obtained judgment, and the real property was sold at a sheriff's sale conducted October 16, 1985. That sale did not satisfy the balance due on the note and a deficiency judgment was granted November 27, 1985.

Mrs. Cada's sole issues on appeal are whether the Bank sold the automobile in a commercially reasonable manner and whether there was a valid consideration for the real estate mortgage.

What is a commercially reasonable sale under either the Uniform Commercial Code (UCC) or the Uniform Consumer Credit Code (UCCC) is a question of fact to be determined by the trier of the facts. *Medling v. Wecoe Credit Union*, 234 Kan. 852, Syl. ¶ 6, 678 P.2d 1115 (1984). The standard required is that the secured party act in good faith and in a commercially reasonable manner. The issue of commercial reasonableness is to be determined by the aggregate of the circumstances, rather than the specific details of the sale taken in isolation. Eight specific factors, together with any other relevant circumstances, are to be considered in deciding whether a sale was commercially reasonable. They are: (1) The duty to clean up, fix up, and paint the collateral; (2) public or private disposition; (3) wholesale or retail disposition; (4) disposition by unit or in parcels; (5) the duty to publicize the sale; (6) the length of time collateral was held prior to sale; (7) duty to give notice of the sale; and (8) actual price received at the sale. *Westgate State Bank v. Clark*, 231 Kan. 81, 92-95, 642 P.2d 961 (1982).

The Court of Appeals found that the Bank had not sold the automobile in a commercially reasonable manner because of a

lack of notice to the debtor specifying *the time and place of sale.* This finding was evidently predicated upon the court's acceptance of the district court's statement that the car was sold at a public auction.

The duty to give notice of the sale of repossessed collateral is defined by K.S.A. 84-9-504(3), which provides in relevant part as follows:

"*Unless collateral is perishable or threatens to decline speedily in value or is of a* type sold on a recognized market, reasonable notification of the time and place of any public sale or *reasonable notification of the time after which any private sale or other intended disposition is to be made* shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent." (Emphasis added.)

The statute clearly distinguishes between the type of notice which must be given when the secured creditor selects a private as opposed to a public sale. Only if the sale is public need the debtor be given notice of where and when the sale will take place. As to a private sale, the creditor must inform the debtor of the date after which the sale will be made.

On February 8, 1982, the Bank wrote to Mrs. Cada stating in part:

"We are not agreeable to your continuing with this contract in view of all the circumstances surrounding this account. However, we are giving you official notice that you will have the opportunity to redeem this 1981 Pontiac by paying to us the outstanding balance, due no later than February 20, 1982. If you do not pay this amount by February 20, 1982, we will proceed to sell the collateral in a reasonable, commercial or private sale and apply the proceeds to your account. If the proceeds of the insurance check and the sale of the collateral does not pay in full the balance owing on the contract, we will then proceed to foreclose on the property in Deerfield, which you had pledged as security for this loan.

"This will be your final notification, therefore, we will expect to hear from you by February 20, 1982, or we will proceed as stated above. If you have any further questions regarding this account, please contact me."

Mrs. Cada did not respond to this notice. If the sale of the automobile through the Colorado Auto Auction was a private as opposed to a public sale, it would appear that the notice to Mrs. Cada was in compliance with the statute and legally sufficient.

The statutes do not define either public or private sale. However, several courts have done so. "The essence of a public sale is that the public is not only invited to attend and bid but also is

informed when and where the sale is to be held." *Lloyd's Plan, Inc. v. Brown,* 268 N.W.2d 192, 196, 24 U.C.C. Rep. Serv. (Callaghan) 1053 (Iowa 1978). This analysis follows the definition in the Restatement of Security § 48, Comment C (1941), where a public sale is defined as "one to which the public is invited by advertisement to appear and bid at an auction for the goods to be sold." Where the persons entitled to purchase at the sale are of a specific category, as opposed to the public, the sale is private. The sale of collateral by a credit union to members of the credit union has been held to be a private sale. *Morrell Employees Credit Union v. Uselton,* 28 U.C.C. Rep. Serv. (Callaghan) 269 (Tenn. App. 1979).

In the instant case, Mrs. Cada's automobile was sold at a wholesale car dealer's auction in Denver, Colorado. Only a limited class of persons, car dealers, were entitled to participate at the sale. As Mrs. Cada or members of the public could not participate in the auction, notice of the time and place of the sale would have served little purpose. The Supreme Court of Iowa in *John Deery Motors, Inc. v. Steinbronn,* 383 N.W.2d 553, 42 U.C.C. Rep. Serv. (Callaghan) 1855 (Iowa 1986), held as a matter of law that a secured party's sale of collateral at an auction open only to automobile dealers constitutes a private sale within the meaning of the UCC. In *Steinbronn,* the Iowa Supreme Court stated:

"We do not agree with the defendants' contention that the sale was 'public' within the meaning of the statute. Unless words and phrases in statutes have been defined by special statutory provision or have 'acquired a peculiar and appropriate meaning in law,' we give them their usual and ordinary meaning. [Citations omitted.] Because the concepts of 'public' sale and 'private' sale are presented without explicit legislative definition, we look to the dictionary for their meaning. A public sale is one that is 'accessible to or shared by all members of the community.' Webster's Third New International Dictionary 1836 (1976). The ordinary meaning of the word 'private', on the other hand, is something 'intended for or restricted to the use of a particular person or group or class,' the converse of something 'freely available to the public.' . . . The automobile auction in the present case was not open to the general public. Attendance was restricted to automobile dealers. Sale at that auction was not public in character.

. . . .

"Case authority, commentators, and the Restatement of Security also support our determination that this sale was not a public sale. *See Roanoke Industrial Loan & Thrift v. Bishop,* 482 F.2d 381, 384-85 (4th Cir. 1973); 9 R. Anderson,

*Uniform Commercial Code* § 9-504:32 (3d ed. 1985); 1A P. Coogan, W. Hogan, D. Vagts & J. McDonnell, *Secured Transactions under the Uniform Commercial Code* § 8.04[2][a][ii] (1985); 2 G. Gilmore, *Security Interests in Personal Property* § 44.6, at 1242 (1965); Hogan, *The Secured Party and Default Proceedings Under the UCC,* 47 Minn. L. Rev. 205, 226 (1962); Restatement of Security § 48, comment c, at 139-40 (1941)." 383 N.W.2d at 555.

Professor Barkley Clark, in his treatise on secured transactions, refers to the Iowa Supreme Court's rationale in *John Deery Motors, Inc. v. Steinbronn,* stating:

"In *John Deery Motors, Inc. v. Steinbronn,* the notice indicated a private sale. The repossessed automobile was sold through a dealer auction. When the secured creditor sought a deficiency, the debtor argued that the notice was defective because the dealer auction was in reality a 'public' sale. The Iowa Supreme Court, in the absence of a definition of 'public sale' in the UCC itself, turned to Webster's, where the term 'public' is defined as 'accessible to or shared by all members of the community.' Since the dealer auction was open only to automobile dealers, it was closed to some aspect of the market; therefore, the court held that it was a 'private' sale, notwithstanding that the method of disposition at the sale was an auction. Because the sale was 'private,' and thus consistent with the language in the notice sent to the debtor, the deficiency claim was allowed. *The holding is significant, because a dealer auction is a very typical method of disposing of motor vehicle collateral. The analysis of the Iowa court seems correct.*" (Emphasis added.) Clark, Law of Secured Transactions Under the Uniform Commercial Code ¶ 4.8[3] (Cum. Supp. No. 1 1987).

We agree with the Iowa court and the other authorities cited that sale at an auto auction, which is limited to automobile dealers and from which the public is precluded from participation, is a private sale within the meaning of the controlling statutes. Although the district court erroneously stated the car was sold at a public auction, the decision reached was correct. We hold that the notice given in the present case was sufficient and met the requirements of K.S.A. 84-9-504(3). As there are no other serious contentions attacking the commercial reasonableness of the sale, the Court of Appeals' holding to the contrary must be reversed.

The other issue raised by the appellant appears to be that there was a lack of consideration for the execution of the real estate mortgage. On this issue the Court of Appeals stated:

"Lack of consideration must be pled as an affirmative defense. K.S.A. 60-208(c); *State ex rel. Ludwick v. Bryant,* 237 Kan. 47, 50, 697 P.2d 858 (1985). Because Cada neither pled nor attempted to plead lack of consideration in the

court below, she waived the defense and may not raise it on appeal. See *Timi v. Prescott State Bank*, 220 Kan. 377, 386, 553 P.2d 315 (1976); *Brooker v. Brooker*, 214 Kan. 89, 96-97, 519 P.2d 612 (1974); *Oehme v. Oehme*, 10 Kan. App. 2d 73, 77, 691 P.2d 1325 (1984), *rev. denied* 236 Kan. 876 (1985); *U.S.D. No. 490 v. Celotex Corp.*, 6 Kan. App. 2d 346, 353-54, 629 P.2d 196, *rev. denied* 230 Kan. 819 (1981)." 11 Kan. App. 2d at 565-66.

Even if the issue had been properly pled and raised on appeal, it would lack merit. See *Farmers & Merchants State Bank v. Higgins*, 149 Kan. 783, 89 P.2d 916 (1939); *Safety Federal Savings & Loan Ass'n v. Thurston*, 8 Kan. App. 2d 10, 648 P.2d 267 (1982).

Although the foregoing would ordinarily dispose of this appeal, the Kansas Bankers Association (KBA), in an excellent *amicus* brief, directs our attention to one other element of the Court of Appeals' opinion, which the KBA asserts requires our consideration. In its opinion the court stated:

"In the 'Promissory Note, Disclosure Statement & Security Agreement,' the bank and Cada agreed that the loan would be governed by the UCCC. See K.S.A. 16a-1-109. Under the UCCC, as interpreted by the Kansas Supreme Court, the bank had no right to a deficiency judgment unless it proved that it disposed of the car in a commercially reasonable manner. *'In consumer transactions, where there is creditor misbehavior such as failure to sell in a commercially reasonable manner, a claim for a deficiency judgment is absolutely barred.' Westgate State Bank v. Clark*, 231 Kan. at 90. See K.S.A. 16a-5-103(1); *Kelley v. Commercial National Bank*, 235 Kan. at 50-51; *Medling v. Wecoe Credit Union*, 234 Kan. at 861-62." (Emphasis added.) 11 Kan. App. 2d at 566.

The KBA asserts that the quoted language from *Westgate State Bank* is overly broad dicta and conflicts with our decision in *Central Finance Co., Inc. v. Stevens*, 221 Kan. 1, 558 P.2d 122 (1976). We would agree with the extensive analysis provided by the KBA if the quoted language is considered out of context and in isolation from the balance of the opinion. However, the holdings in syllabus ¶¶ 1 and 2 of *Westgate State Bank* clearly state the rebuttable presumption provisions which apply to loans under Article 9 of the Uniform Commercial Code. The single sentence quoted from *Westgate State Bank* must be read and considered in light of the entire opinion and, when viewed in that manner, the decisions in *Westgate State Bank* and *Central Finance Co., Inc.* are not inconsistent. As we have already

determined that the district court was correct in its judgment herein, we see no reason to belabor this issue further.

The judgment of the Court of Appeals is reversed and the judgment of the district court is affirmed.