**In re Steven L. DOWNING, Kelley A. Downing, Debtor.**

**No. 01–42765.**

United States Bankruptcy Court, W.D. Missouri.

Dec. 19, 2002.

Stephen B. Strayer, Esq., Liberty, MO, for Debtors.

Michael J. McKitrick, Esq., Danna McKitrick P.C., St. Louis, MO, for BMW Financial Services.

### MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Chief Judge.

Debtor Steven L. Downing objected to the unsecured deficiency claim of creditor BMW Financial Services, N.A., LLC (BMW) in this Chapter 13 bankruptcy case. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The fol-

lowing constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## ISSUE PRESENTED

On April 4, 2002, BMW notified Mr. Downing that it intended to sell his vehicle pursuant to state law on a date no sooner than 10 days after the date of the notice. The letter was sent to Mr. Downing at his address in Kansas City, Missouri. On August 1, 2002, the vehicle was sold at a commercial auction in Milwaukee, Wisconsin. Missouri law requires that, in order to obtain a deficiency judgment after the sale of collateral, the creditor must provide "a reasonable authenticated notification of disposition," [1] including "the method of intended disposition, ... the time and place of public sale, or the time after which any other disposition is to be made," and debtor's right to an accounting of any unpaid indebtedness.[2] In addition, if the creditor is disposing of consumer goods, it must provide a description of any liability for a deficiency.[3] Was the notice provided by BMW sufficient as to these requirements.

## DECISION

■ A notice that fails to inform the debtor that the intended method of disposition is a private sale, that the debtor has a right to an accounting, and that debtor will be liable for any deficiency following the sale is not sufficient to preserve the creditor's right to a deficiency claim.

## FACTUAL BACKGROUND

On September 25, 2000, Mr. Downing purchased a 1999 BMW 528i from BMW, and granted BMW a lien on the car. On June 11, 2001, the Downings filed a Chapter 13 bankruptcy petition. Debtors' proposed plan provided for the surrender of the 1999 BMW and for the payment of 100 percent of the allowed claims. On March 27, 2002, after this Court granted BMW relief from the automatic stay, Mr. Downing surrendered the vehicle to BMW. On April 4, 2002, BMW notified Mr. Downing that it intended to sell the car, as allowed under state law, no sooner than 10 days after the date of the notice. On August 1, 2002, BMW sold the car at a commercial auction in Milwaukee, Wisconsin. After the sale, BMW filed an unsecured deficiency claim in this case in the amount of $18,517.24. Mr. Downing objected to the claim, on the grounds that BMW did not provide him with proper notice of the sale as required by Missouri's version of Revised Article 9 of the Uniform Commercial Code (the UCC). A hearing was held on November 25, 2002, at which the parties submitted exhibits by stipulation and agreed that there is no dispute as to the facts. Pursuant to agreement, the parties submitted briefs on December 5, 2002.

## DISCUSSION

■ In Missouri, compliance with the notice provisions of Article 9 is a prerequisite to the recovery of a deficiency following the sale of repossessed collateral.[4] As the court in *McKesson Corporation* stated, "[s]trict compliance is required because deficiency judgments after repossession of collateral are in derogation of common law ... in other words, since deficiency judg-

---

1. Mo. Stat. Ann. § 400.9–611(b) (Supp.2002).

2. *Id.* at § 400.9–613(1)(C), (D), and (E).

3. *Id.* at § 400.9–614(1)(B).

4. *McKesson Corp. v. Colman's Grant Village, Inc.,* 938 S.W.2d 631, 633 (Mo.Ct.App.1997) (citations omitted).

ments were unheard of in common law, the right to a deficiency judgment accrues only after strict compliance with a relevant statute." [5] The party seeking the deficiency judgment has the burden of proving the sufficiency of the notice.[6] Any doubt as to what constitutes strict compliance with the statutory requirements must be resolved in favor of the debtor.[7]

The parties agree that the adequacy of the notice is governed by sections 400.9–613 and 400.9–614 of the Missouri's Revised Statutes.[8] Section 400.9–613 provides the contents and form of notification prior to the disposition of non-consumer goods.

■ Except in a consumer-goods transaction, the following rules apply:

(1) The contents of a notification of disposition are sufficient if the notification:

(A) Describes the debtor and the secured party;

(B) Describes the collateral that is the subject of the intended disposition;

(C) States the method of intended disposition;

(D) States that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting; and

(E) States the time and place of a public sale or the time after which any other disposition is to be made.[9]

Section 400.9–614 applies those same requirements to consumer-goods dispositions.[10] In addition, when disposing of consumer goods, the creditor must provide a "description of any liability for a deficiency of the person to which the notification is sent," [11] and a "telephone number from which the amount that must be paid to the secured party to redeem the collateral under section 400.9–623 is available." [12] The pertinent distinction between the two provisions is that in nonconsumer-goods dispositions, the question of whether the contents of a notification that lacks any of the required information are nevertheless sufficient is a question of fact.[13] Since an automobile is a consumer good,[14] however, the sufficiency of the notice sent by BMW must be evaluated pursuant to both sections 400.9–613 and 400.9–614.

The notice sent by BMW was in the form of a letter dated April 4, 2002.[15] The letter identified the debtor as Steven L. Downing, the creditor as BMW, and the collateral as a 1999 BMW 528i, WBADP5340XBR95304. It then stated as follows:

---

5. *Id.*

6. *Cherry Manor, Inc. v. American Health Care, Inc.* 797 S.W.2d 817, 821 (Mo.Ct.App.1990).

7. *Lendal Leasing, Ltd. v. Farmer's Wayside Stores, Inc.,* 720 S.W.2d 376 (Mo.Ct.App. 1986); *Springfield Chrysler—Plymouth, Inc. v. Harmon,* 858 S.W.2d 240 (Mo.Ct.App.1993).

8. Mo. Stat. Ann. §§ 400.9–613 and 400.9–614 (Supp.2002). Note that revised Article 9 became effective in Missouri as of July 1, 2001. Since this action was commenced after that date, revised Article 9 governs my decision. Mo. Stat. Ann. § 400.9–702.

9. *Id.* at § 400.9–613(1)(E).

10. *Id.* at § 400.9–614(1)(A).

11. *Id.* at § 400.9–614(1)(B).

12. *Id.* at § 400.9–614(1)(C).

13. 400.9–613(2).In consumer-goods transactions, a notification that lacks any of the required information is insufficient as a matter of law. *Id.,* UCC Comment, ¶ 2.

14. *See* Mo. Stat. Ann. § 400.9–102(23), which defines consumer goods as goods that are used or bought for use primarily for personal, family, or household purposes.

15. Deb. Ex. # A.

This letter confirms you have rejected and/or terminated your loan due to the filing of bankruptcy. BMW Financial Services NA, LLC has taken possession of the Vehicle.

You are notified that BMW Financial Services NA, LLC intends to sell the vehicle as allowed under state law, but no sooner than 10 days after the date of this letter.

This letter is not being sent in violation of the discharge injunction of 11 U.S.C. § 727 and/or 1328(e), if any, but is merely an attempt to comply with requisite notice requirements under the contract/lease and applicable law. If you have received a discharge in bankruptcy, this letter is an attempt to collect a debt solely from the vehicle pledged to secure payment of the contract/lease and not from you personally and any information obtained will be used for that purpose. Should you have any questions, call us at the number referenced below, Monday through Friday, 9:00 a.m. to 5:00 p.m. ET or at either address listed below.[16]

At the hearing, BMW represented that it sold the 1999 BMW at a commercial auction in Milwaukee, Wisconsin attended only by automobile dealers. As such, BMW argues that the sale was a private sale to commercial buyers, therefore, it was not required to provide Mr. Downing with the exact time and place of the auction. While BMW offered no support for this contention, in fact, other courts have held that a dealers-only auction is not pub-lic in character.[17] Professor Barkley Clark, likewise, posits that where a sale is open only to automobile dealers, it is closed to some aspect of the market; therefore, it is a private sale.[18] Nonetheless, the UCC clearly required BMW to inform Mr. Downing as to whether it would sell the car at either a private sale or public sale. Mr. Downing rightly points out in his brief that the notice sent by BMW did not inform him of the type of sale contemplated, or that he would be responsible for any deficiency. It also failed to inform Mr. Downing of his right to an accounting of the exact amount of his indebtedness, or what BMW claimed the indebtedness to be at the time of the sale. The burden of proof is on BMW to demonstrate that it has in all respects complied with the notice provisions of the UCC.[19] By the express terms of the statute, that includes the method of disposition.[20] BMW did not specify the nature of the sale, it did not inform Mr. Downing of his potential liability, and it did not inform him of his right to an accounting. For all of these reasons, I find that the notice did not strictly comply with the requirements of section 400.9–613 of Missouri's Revised Statutes, as made applicable to consumer-goods transactions by section 400.9–614.

■ BMW also argues that since the Downings' plan provided that Mr. Downing intended to surrender the vehicle, Missouri law does not require it to advise him of his right to redeem the vehicle. But that is not the sole purpose served by the

**16.** *Id.*

**17.** *See, e.g. Beard v. Ford Motor Credit Co.,* 41 Ark.App. 174, 850 S.W.2d 23, 28 (1993) (citing *Ford Motor Credit Co. v. Solway,* 825 F.2d 1213, 1218 (7th Cir.1987); *In re Garden Nat'l Bank of Garden City v. Cada,* 241 Kan. 494, 738 P.2d 429 (1987); *John Deery Motors, Inc. v. Steinbronn,* 383 N.W.2d 553 (Iowa 1986)).

**18.** Barkley Clark, **Law of Secured Transactions Under the Uniform Commercial Code,** § 4,08(2) at 4–98 (1988).

**19.** *Springfield Chrysler–Plymouth, Inc. v. Harmon,* 858 S.W.2d 240, 245 (Mo.Ct.App.1993).

**20.** *Id.* at 246 (Flanigan, J.) (concurring in part and dissenting in part).

notice. If a debtor is given the terms of the private sale, he has the opportunity to offer better terms. If a debtor is told the time and place of a public sale, he has an opportunity to appear at the sale, or have someone appear on his behalf, and bid. In any event, Missouri has long held that the right to a deficiency exists only if the creditor strictly complies with the statutory requirements of the UCC, regardless of whether there was any resulting harm to the debtor from the failed notice.[21]

The notification was not sufficient, therefore, under Missouri law, BMW loses its right to a deficiency judgment. Debtors' objection to the claim of BMW will be sustained. An Order consistent with this Memorandum Opinion will be entered this date.

---

**21.** *See In re Carter,* 203 B.R. 697 (Bankr. W.D.Mo.1996) (holding that a bank's failure to give notice to the debtors of the time and place of the sale of their cattle deprived the bank of a deficiency claim, even though the bank sought relief from the automatic stay in the bankruptcy court prior to repossessing the cattle).