Filed April 9, 2008                    No. 3--07--0336

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

| | | |
|---|---|---|
| PATRICK A. PARKS, | ) | Appeal from the CircuitCourt |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois |
| | ) | |
| v. | ) | No. 06-SC-5189 |
| | ) | |
| CNAC-JOLIET, INC., | ) | Honorable |
| | ) | Lawrence Gray, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE WRIGHT delivered the modified opinion upon denial of petition for rehearing:

Plaintiff, Patrick A. Parks, brought action against defendant CNAC-Joliet, Inc., pursuant to section 9-625 of the Uniform Commercial Code (Code) (810 ILCS 5/9-625 (West 2006)) for monetary damages resulting from improper notice of defendant's intent to sell plaintiff's repossessed automobile. After a trial on the merits, the circuit court found that defendant did not violate the statutory notice requirements and entered judgment in favor of defendant. Plaintiff appeals from that ruling. We reverse.

FACTS

Plaintiff, who is referenced in the record as "Miss Parks," purchased a 1999 Oldsmobile Alero from a car dealership known as J.D. Byrider on January 10, 2006. The purchase price for the car, including sales tax and a $999 service agreement, was $11,008.28. J. D.Byrider, the dealership,

required plaintiff to pay a $1,900 down payment on the car as proof of the purchase.

Plaintiff paid $1,300 in cash to the dealership but was unable to pay the $600 balance on the down payment. J.D. Byrider allowed her to take possession of the car on January 10 and agreed to accept the balance of the down payment in three biweekly $200 installments to be paid directly to the dealership. The three deferred down payments were due on January 24, February 7, and February 21, 2006.

Plaintiff financed only the $9,314.17 balance of the purchase price and service contract with defendant, CNAC-Joliet. Pursuant to the retail installment contract, the finance company loaned plaintiff the $9,314.17 at an annual percentage rate of 20.986%. Plaintiff agreed to repay the loan to defendant by making 80 biweekly payments of $162.27 beginning March 7, 2006. Defendant took a security interest in the vehicle as part of the financing agreement, thus becoming a secured creditor.

Plaintiff paid the dealership $1,300 toward her down payment on January 10, 2006. According to her agreement with the seller, she also paid the first $200 installment toward the down payment on January 24, 2006. The second installment on the down payment was due February 7, 2006, but plaintiff failed to pay this installment to J.D. Byrider. Defendant repossessed the vehicle on February 9, 2006.

On February 22, 2006, defendant sent plaintiff a notice of intent to dispose of the vehicle by a private sale. The notice identified the unpaid balance of the loan as $9,314.17 and identified an additional $325 charge for storage of the car after repossession. The notice revealed plaintiff must pay Defendant $9,639.17 to recover her vehicle.

In August of 2006, plaintiff brought suit against defendant requesting statutory monetary damages for a violation of the Code's reasonable-notification requirements regarding the disposition

2

of collateral by a secured creditor. After bench trial, the circuit court found defendant's notice complied with the requirements of the Code and entered judgment in favor of defendant. This appeal followed.

## ANALYSIS

On appeal, plaintiff asserts that the trial court erroneously found defendant substantially complied with the notice requirements of the Uniform Commercial Code and denied plaintiff's request for both actual and statutory damages pursuant to 810 ILCS 5/9-625 (West 2006). Plaintiff argues the trial court erroneously excused defendant's failure to provide written notice informing her of the statutory right to an accounting before the sale of her repossessed automobile. Defendant argues the trial court's ruling was correct because the face of the notice contained enough financial details to constitute an accounting, making additional notice of the right to this information unnecessary.

Here, the financial amounts itemized in the notice are not in dispute. This case requires only a review of the trial court's application of the law to the undisputed facts. Therefore, our review is *de novo*. *Milledgeville Community Credit Union v. Corn*, 307 Ill. App. 3d 8, 12 (1999), *Harris Bank of Roselle v. Village of Mettawa*, 243 Ill. App. 3d 103, 113 (1993)).

Under the Code, a secured creditor may sell or otherwise dispose of collateral after a debtor defaults. 810 ILCS 5/9-610(a) (West 2006). However, before the property may be disbursed by the secured party, the creditor must notify the debtor, and any other interested parties specified in the Code, that the secured creditor intends to dispose of the collateral seized from the debtor. 810 ILCS 5/9-611(b) (West 2006).

The Code outlines the requirements for a notice of the "plan to sell property" securing a loan

for a consumer goods transaction. 810 ILCS 6/9-614 (West 2006). The notice must advise the consumer of the right to receive an explanation of how the secured party calculated the amount owed by the consumer. The Code provides a safe harbor form for the convenient reference of secured creditors. The relevant portions of the suggested language are set forth below:

NOTIFICATION OF OUR PLAN TO SELL PROPERTY

To: .......... (Name and address of any obligor who is also a debtor)

Subject:.......... (Identification of Transaction)

We have your...............(describe collateral), because you broke promises in our agreement.

***

The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you.........(will or will not, as applicable) still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses. To learn the exact amount you must pay, call us at....................(telephone number).

If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at...............(telephone number) or write us at...........................(secured party's address) and request a written explanation. We will charge you $....... for the explanation if we sent you another written explanation of the

4

amount you owe us within the last six months.*** 810 ILCS 5/9-614 (West 2006).

After comparing the formal language of section 9-613 of the Code to the plain language, tailored to the consumer, found in section 9-614, we conclude the trial court correctly construed the language of the notice, "How we have figured the amount," to require an "accounting." However, the trial judge found that the financial amounts, set forth below, constituted an actual "accounting" and rendered the language in the safe harbor form "superfluous."

The notice in this case does not advise Miss Parks of her right to obtain information revealing how defendant "figured the amount" necessary for her to redeem the vehicle because the notice was devoid of transactional details. Defendant's notice to Miss Parks provided as follows:

"TO REDEEM

To REDEEM your vehicle, you must pay the amount shown below to CNAC at its address shown above:

Unpaid contract balance.................................................................$9,314.17

Delinquency and collection charges................................................... 0.00

Expenses of retaking the vehicle....................................................... 0.00

Expenses of repairing the vehicle..................................................... 0.00

Expenses of storing the vehicle........................................................ 325.00

Other(Specify)        MECHANICAL FEES                     00.00

                                                                                                    $9,639.17"

Miss Parks accepted two separate obligations with regard to the purchase of this automobile. One obligation was to "re-pay" defendant the loaned amount plus accrued interest at

5

the rate of 20.986% , by making 80 biweekly payments of $162.27 beginning on March 7, 2006. The automobile served as collateral to insure these payments would be made on the loan of $9314.17. Therefore, defendant was a secured creditor with regard to this transaction.

However, there is a second but very different transaction at the core of the issues in this case. Miss Parks paid the seller $1300 in cash towards a $1900 down payment. J.D. Byrider, the seller, agreed to accept the $600 balance due on the down payment in three equal biweekly payments of $200. Defendant insists J.D. Byrider assigned the right to receive the payments on the $600 balance due to defendant. These three $200 payments were separately due on January 24, February 7, and February 21, 2006. Miss Parks made the first $200 payment and then defaulted on her promise to pay the February 7, 2006 payment.

Significantly, the seller did not loan Miss Parks $600 or advance any funds on her behalf. This was an interest free transaction. The seller merely assumed a calculated risk that Miss Parks would pay the balance owed, presumably based on the fact that she made a $1300 payment in cash and promised to pay the small remaining balance over a short period of time. We conclude that this calculated risk was not secured by the automobile as collateral. Consequently, the seller did not become a secured creditor as to Miss Parks' agreement to pay the $600. Since the seller was unsecured as to the $600, defendant could not acquire more rights by assignment than the unsecured seller originally possessed. *Litwin v. Timbercrest Estates, Inc.*, (1976), 37 Ill.App.3d 956, 958 (1976); *People v. Dale*, 112 Ill. 2d 460, 464 (1986).

This view is consistent with defendant's conduct following the purported assignment. Importantly, after defendant obtained the assigned right to receive the deferred $600, defendant credited Miss Parks the full amount for the $1900 down payment. This credit conclusively

6

demonstrates that defendant did not treat the down payment as a secured obligation under the terms of the written finance agreement.

There is further evidence that the car did not serve as collateral for the balance due on the seller's down payment. The dissent correctly notes the accuracy of the information reflected in the notice has not been challenged by Miss Parks. We also agree the $9,314.17 "unpaid balance due" declared by the notice in this case is predicated on information that the parties agree to be reliable. However, the notice omits any reference to the $400 remaining balance on the down payment. This omission, on the face of the notice to dispose of collateral itself, offers additional persuasive evidence that the obligation to pay the deferred down payment was not secured by the collateral.

In other words, if the $200 payments were part of the secured transaction as defendant professes, then the accounting should have revealed a credit for the $200 paid and also revealed the remaining $400 balance on the down payment. However, defendant agrees the balance due was $9314.17. This supports our conclusion that the $400 balance on the down payment was not protected by the collateral. Defendant's argument, that the information on the face of the notice was accurate, defeats defendant's assertion that the assigned down payment was secured by collateral.

It may be argued that originally the $400 balance on the down payment was secured by the collateral, but was later forgiven by defendant to plaintiff's advantage. However, if the balance of the deferred down payment was forgiven, Miss Parks was not in default.

Further, even though the trial court concluded that the information on the face of the notice was accurate, we do not agree that this information was sufficiently detailed to constitute

7

an accurate "accounting " as defined by the Code. An accounting is defined under the Code as an authenticated record that identifies the "components" of the debtor's obligations in reasonable detail. 810 ILCS 5/9-102(4) (West 2006).

The "accounting" in this case did not provide reasonably detailed information as required by the definition of an accounting found at 810 ILCS 5/9-102(4) (West 2006). In fact, the notice provided no details other than the total balance outstanding on the secured transaction.

Common sense dictates that the components, required by the Code, should include something more than simply the bottom line or the balance due. We suggest the components for an accounting, under the provisions of the Code relevant to this appeal, should include financial details such as: (1) the amount borrowed by the consumer and secured by the collateral for repayment; (2) the amounts paid by the consumer towards the secured debt; (3) the identification of any defaulted payments, and (4) any additional charges incurred by the secured creditor.

Here, if more details had been provided in the notice, then both defendant and Miss Parks could have discovered the secured $9314.17 loan was not in default because the first $162.27 installment on this secured transaction was not due until March 7, 2006. However, defendant repossessed the car on February 9, 2006 and issued the notice of intent to dispose of collateral February 22, 2006, before any default on the secured debt for the auto loan occurred.

Herein lies the importance of informing a debtor of the right to an accounting. If defendant advised Miss Parks of her right to this accounting, then her failure to request the accounting could waive any discoverable errors that would have been disclosed by a reasonably detailed and accurate accounting. However, having not been informed of this right, Miss Parks cannot be said to have waived the errors.

Under the proper circumstances, we could agree with Justice Carter's conclusion that an accurate accounting set forth on the face of a notice may excuse the omission of language explaining a consumer's right to an accounting. However, we respectfully disagree that the financial information in this case , which was devoid of detail, created the correct circumstances to develop such a rule.

Here, the notice of intent to dispose of collateral failed to advise the consumer of the right to an accounting at the consumer's expense. This notice simply does not comply with the statutory requirements under the Code and is, therefore, insufficient. For the foregoing reasons, we reverse the order of the circuit court and remand for proceedings consistent with this order. The circuit court must now determine the penalty to be assessed pursuant to statute.

CONCLUSION

For the foregoing reasons, we reverse the judgment of the circuit court of Will County.

Reversed.

LYTTON, J., concurring.

CARTER, J., dissenting:

I agree with the statement in the majority's opinion that under proper circumstances, a secured creditor in a consumer-goods transaction may, in a notice of disposition of collateral, provide the debtor with an actual accounting, rather than a statement that an accounting may be obtained at a certain cost. The Code itself and the official comments support that conclusion. I disagree with the majority when they determine that the financial information in this case did not create the correct circumstances for such a rule. I also dissent because I disagree with other aspects of the majority's

9

ruling.

First, I believe that the majority misstates the standard of review. This case involves a mixed question of law and fact. Therefore, a mixed standard of review should be applied. To the extent that this court is called upon to interpret the Code, I would apply a de novo standard of review, and to extent that this court is called upon to review the trial court's factual findings, including the finding that an accounting was given, I would review those findings to determine if they are against the manifest weight of the evidence. See Amalgamated Bank of Chicago v. Kalmus & Associates, Inc., 318 Ill. App. 3d 648, 655, 741 N.E.2d 1078, 1083-84 (2000).

Second, as indicated above, I believe that the majority's ruling clouds the issue that has been presented. In the present case, the notice sent by defendant contained an itemized list of the costs that plaintiff had to pay to redeem the vehicle. At the bottom of the list, the total amount necessary to redeem the vehicle was calculated. The trial judge made a finding of fact that the list constituted an accounting. Based on the evidence presented at the trial, particularly the notice and the portions of the financing agreement that were admitted, that finding is not against the manifest weight of the evidence and must be upheld on appeal. See Amalgamated Bank of Chicago, 318 Ill. App. 3d at 655, 741 N.E.2d at 1083-84.

Thus, the issue before this court is whether a notice that provides an accounting, rather than a statement that an accounting is available at a certain cost, complies with the reasonable-notification requirements of the Code. To my knowledge, there are no Illinois cases on that issue. Nor have I found any cases from any other jurisdiction that directly address that issue. Plaintiff has cited In re Downing, 286 B.R. 900 (W.D. Mo. 2002) and Coxall v. Clover Commercial Corp., 4 Misc. 3d 654, 781 N.Y.S.2d 567 (2004). Those cases address the accounting requirement in general and the

10

situation where no information regarding an accounting is provided in the notice. See Downing, 286 B.R. at 903-05; Coxall, 4 Misc. 3d at 659-60, 781 N.Y.S.2d at 573. They do not address the situation before this court in the present case where an accounting has been provided in the notice.

The Code and the official comments, however, provide an answer to this question. Under the Code, a secured-creditor's notice of intent to dispose of collateral in a consumer-goods transaction must provide the debtor with certain information, including the right to an accounting. 810 ILCS 5/9-613(1); 9-614(1) (West 2006). Although the Code merely requires that the notice contain a statement that the debtor may obtain an accounting at a certain cost (810 ILCS 5/9-613(1)(D); 9-614(1) (West 2006)), the secured creditor may provide additional information without running afoul of the Code's requirements (810 ILCS 5/9-614(3) (West 2006)). I believe, and the majority perhaps believes, that providing an actual accounting in the notice, rather than a statement that an accounting may be obtained, is an example of the type of additional information that could properly be provided under the Code. The provision of such information at no extra cost to the debtor would certainly facilitate one of the purposes of the reasonable notification requirement, to allow the debtor to redeem the property. See Boender v. Chicago North Clubhouse Ass'n, 240 Ill. App. 3d 622, 631, 608 N.E.2d 207, 213 (1992) (discussing prior version of the Code).

Third, I disagree with the majority's conclusion that the information provided in the present case was either not an accounting or that it was insufficient. The Code defines an accounting as an authenticated record of the total unpaid secured obligation, within a certain date, that identifies the components of the obligation in reasonable detail. 810 ILCS 5/9-102(a)(4) (West 2006). In other words, an accounting is a written explanation of how the secured creditor "figured the amount that [the debtor] owes." See 810 ILCS 5/9-614(4) (West 2006). That is exactly what was provided in

11

the present case. There is no support in the Code for the additional information the majority sets forth as necessary for a proper accounting. In fact, the majority cites no authority for its statement, other than a reliance upon common sense. Had the debtor requested an accounting, she would have gotten nothing more than was provided in the notice in the present case. How can it be said, then, that the notice was insufficient.

Fourth, and finally, I disagree with the majority's assertion that Miss Parks was not in default. The financing documents contained in the record clearly spell out that Miss Parks had an obligation to pay both the down payment installments and the loan payments and that a security interest was being taken on both of those obligations. Even Miss Parks, herself, does not dispute that she defaulted on her obligation to CNAC-Joliet.

For the reasons stated, I respectfully dissent.