An action was brought by the plaintiff in error, Delight Bradstreet, as plaintiff, in the district court of Tulsa county, to cancel a mortgage held by the defendant in error, J. E. Crosbie, upon certain real property located in the city of Tulsa. Subsequently, L. G. Bradstreet, the husband of Delight Bradstreet, intervened in the action, also seeking the cancellation of the mortgage and a promissory note which the mortgage purported to secure. An answer was filed by the defendant in error, and also a cross-petition, wherein he sought judgment foreclosing said mortgage.
Trial resulted in a judgment of foreclosure against both Delight Bradstreet and L. G. Bradstreet, and a personal judgment against L. G. Bradstreet individually for the sum of $22,017.13, plus interest and attorneys' fees. From this judgment, and from an order overruling their motion for a new trial, both the original plaintiff, Delight Bradstreet, and the intervener, L. G. Bradstreet, appeal.
After judgment foreclosing the mortgage, and on the same day plaintiffs in error's motion for a new trial was overruled, the trial court, on the application of defendant in error, appointed a receiver for the premises covered by the mortgage. Immediately after the appointment plaintiffs in error moved the court to vacate the order, and when their motion so to do had been overruled reserved an exception to the ruling of the court.
It was charged by plaintiffs in error, both in the amended petition of Delight Bradstreet and in the petition in intervention of L. G. Bradstreet, that the note and mortgage in controversy here were not supported by any consideration.
The record discloses that prior to June 29, 1923, both the defendant in error and *Page 270 
plaintiff in error, L. G. Bradstreet, were interested in certain oil corporations located in the city of Tulsa. Among other corporations L. G. Bradstreet was president of Bradstreet Braden, Inc., and owned 60 per cent. of its stock. The other 40 per cent. was owned by C. E. Braden and wife.
J. E. Crosbie was likewise interested in several corporations, among them being the Little Fay Oil Company, of which he was president. Prior to January 29, 1923, Bradstreet Braden, Inc., and J. E. Crosbie purchased the 10/16ths interest in an oil and gas lease designated in the record as the school land lease, each taking the 5/16ths interest therein. This lease was operated for some time by J. E. Crosbie.
The Bradstreet companies did not prosper, and Bradstreet 
Braden, Inc., soon was unable to meet its share of the operating expenses of the school land lease, and was also about to default in payment of certain notes given for its share of the purchase price of said lease. It thereupon negotiated a sale of all its properties to Schaffer Oil Refining Company. The property of all the other companies in which Bradstreet was interested was included in the sale. At this time Bradstreet 
Braden, Inc., owed, as its share of the operating expenses of the school land lease, a considerable sum of money. Out of the proceeds of the sale to the Schaffer Company it paid $25,000 of this debt in cash and executed its note for about $18,000, on January 29, 1923, to Little Fay Oil Company, a corporation, due 90 days thereafter.
This note was indorsed by L. G. Bradstreet individually. It also paid out of the proceeds of this sale other obligations, among them being some of its notes given in payment of the purchase price of the school land lease, which were then held by the Central National Bank of Tulsa. In the fall of 1923 Bradstreet Braden, Inc., having defaulted in the payment of its note to Little Fay Oil Company, Crosbie procured from L. G. Bradstreet, on November 19, 1923, a note for some $22,000, secured by a mortgage on Bradstreet's home in the city of Tulsa, signed and acknowledged by his wife, Delight Brad-street, for which he surrendered the note of January 29, 1923, executed by Bradstreet Braden, Inc., to Little Fay Oil Company.
At the time this note was given, to wit, November 19, 1923, Bradstreet Braden was insolvent, and the note of January 29, 1923, was worthless.
This note and the several renewals thereof, together with the mortgage purporting to secure it, form the basis of the instant action. At the request of plaintiffs in error the trial court made and filed findings of fact and conclusions of law. The trial court, among other things, found as follows:
"That the real estate mortgage to secure the indebtedness herein covers the homestead of plaintiff and intervener, who are husband and wife, and was the homestead for sometime prior to the execution of said mortgage, and at all times since its execution to the present time. * * * The court finds that the indebtedness represented herein and secured by said mortgage was given to pay and satisfy the running expenses of the school land lease referred to in the evidence, said expenses being due to the defendant by Bradstreet Braden, Inc. * * *"
The case at bar is one of equitable cognizance, and this court will review the entire record, and render or cause to be rendered such judgment as the trial court should have rendered. Schock v. Fish, 45 Okla. 12, 144 P. 584. Plaintiffs in error contend that the trial court erred in holding that the note and mortgage of November 19, 1923, were executed for a good and valuable consideration. The trial court found that the note and mortgage of November 19, 1923, were given to pay and satisfy the running expenses of the school land lease due to the defendant from Bradstreet Braden, Inc.
The right of J. E. Crosbie to enforce the original obligation against Bradstreet Braden, Inc., may not be questioned. Primarily, the original debt is and has always been the debt of Bradstreet Braden, Inc.
The asserted claim of J. E. Crosbie of right to recover therefor upon a promissory note executed by L. G. Bradstreet individually, and secured by a real estate mortgage upon his homestead, suggests at once the question of whether the note is supported by any consideration. The basis for this claim must necessarily be found in the notes of January 29, 1923, and of November 19, 1923.
The first note of January 29, 1923, was given by Bradstreet Braden, Inc., to Little Fay Oil Company, a corporation. Since the trial court found the indebtedness was due not to Little Fay Oil Company, but to Crosbie, it must follow that the note was unenforceable, because made payable to a payee to whom Bradstreet Braden owed nothing, unless the circumstances that it was indorsed by L. G. Bradstreet individually should render it enforceable as to him, or unless there was a transfer of the debt by Crosbie to Little Fay Oil Company prior to the execution of the note. Section 7698, C. O. S. 1921, provides: *Page 271 
"Absence or failure of consideration is a matter of defense as against any person not a holder in due course. * * *"
In First National Bank v. Gibbs (Ind.) 141 N.E. 264, it is said:
"As between the accommodating and the accommodated parties, no consideration is a proper defense. Shireman v. Second National Bank, 72 Ind. App. 256, 124 N.E. 712. This is true whether the accommodating party is drawer or indorser."
We fail to find any evidence in the record of a transfer of the original debt by Crosbie to Little Fay Oil Company prior to the note of January 29, 1923. It is not unreasonable or unequitable to require of defendant in error, Crosbie, actual proof of such transfer in view of the court's finding that the indebtedness was due to Crosbie individually.
Crosbie is seeking to recover of Bradstreet a debt originally due from another, and Crosbie is not in position to complain if he is required to make strict proof of his claim in the premises. The general rule is stated in 5 C. J. 1008, as follows:
"An assignee suing to recover in his own right on an assigned chose in action or contract must plead the fact of assignment by direct averment."
See, also, Lapique v. Denis (Cal.App.) 139 P. 237.
It follows, we think, clearly, that the note of January 29, 1923, was unenforceable, because admittedly Bradstreet 
Braden, Inc., owed nothing to the payee therein, and being unenforceable against the payee it was unenforceable against Bradstreet, the accommodation indorser. The question then recurs: Can the surrender of a legally unenforceable negotiable note constitute a valuable consideration for the assumption by a third party of a debt for which he is not otherwise liable? If not, there is no consideration to support the note of November 19, 1923, and the mortgage given to secure it. The principle that the surrender of an unenforceable promissory note of a third party cannot constitute a consideration for the giving of a note and mortgage by another is clearly established by the following authorities: Widger v. Baxter (Mass.)76 N.E. 509; Seager v. Drayton (Mass.) 105 N.E. 461.
There remains for consideration the question whether the forbearance of defendant in error, Crosbie, to sue Bradstreet Braden, Inc., for the operating expenses due him from said corporation can supply a consideration for the note and mortgage here in controversy.
It is contended that the forbearance of Crosbie to sue Bradstreet Braden, Inc., on its debt to him for the operating expenses of the school land lease, was a sufficient consideration for the note of November 19, 1923, on the theory that the unenforceable note of January 29, 1923, did not extinguish the original debt. But the original debt was not the debt of Bradstreet, but was the debt of Bradstreet Braden, Inc., for which he was neither legally nor morally bound. Still Bradstreet, though a stranger to the obligation, might have become liable on his note of November 19, 1923, if Crosbie suffered any detriment by giving up his right to sue the corporation.
According to the great weight of the evidence Bradstreet 
Braden, Inc., was an insolvent corporation, destitute of assets at the time the note of November 19, 1923, was executed, and Crosbie's debt was therefore worthless. Crosbie, in giving up his right to sue the corporation, gave up no valuable right unless the right to pursue a worthless claim in the courts can be said to be a valuable right.
In Citizens Trust Co. v. McDougald, 132 Tenn. 323, 178 S.W. 432, it is said:
"In the case before us it appears that the note was made payable directly to the bank. Nominally, there was a loan to McDougald, but the bank paid out no money. It simply credited the proceeds on a worthless note which it held on the Peoples Gin Company, an insolvent corporation, for whose obligations McDougald was in no way responsible. The judgment was correct. There was no consideration for the note. It is true, that under the Negotiable Instruments Law, contrary to the rule formerly prevailing in this state, a pre-existing debt may now stand for value, but this is not true where such pre-existing debt is worthless at the time and the obligation of a third party (citing authorities). Such was the present case. The bank was not therefore a holder for value."
See, also, Williams v. Nichols (Mass.) 10 Gray 83; Schroder v. Fink, 60 Md. 436.
The principle to be deduced from the above authorities is that the forbearance of a valueless right of action against an insolvent corporation destitute of assets cannot constitute a consideration for an assumption by a third party of a debt for which he is not otherwise liable.
The contention that there was a dispute between Crosbie and Bradstreet, as to whether Bradstreet was individually liable for the debt of the corporation, and that the note was given in settlement and compromise *Page 272 
of a disputed claim, is without merit. There could be no legitimate claim that Bradstreet was personally liable for the original debt of the corporation, or was any such claim made.
At the time of the execution of the note of November 29, 1923, the claim then made was that Bradstreet was liable on his personal indorsement of the unenforceable note of January 29, 1923, to Little Fay Oil Company.
Defendant in error contends that there was a debt due Crosbie from Bradstreet Braden, Inc., of some $2,000 for operating expenses on the Charity Davis lease, and the satisfaction of this debt was a good consideration for the note and mortgage in controversy.
The trial court, however, found that the indebtedness represented by a note and mortgage in question arose from the operation of the school land lease. The correctness of this finding is not brought here for review by a cross-petition of defendant, and it is therefore not for our consideration. It is our conclusion that the note of November 19, 1923, the several renewals thereof, and the mortgage executed by plaintiffs in error securing the same, involved in this action, were all executed without consideration, and the trial court therefore erred in not canceling both note and mortgage. Other propositions are discussed in the briefs of the parties, but in view of the conclusion reached that the instruments referred to were not supported by any consideration it is not necessary to notice them.
The judgment of the trial court is therefore reversed, and the cause remanded, with directions to the trial court to set aside its judgment herein, and render judgment canceling the note and mortgage of November 19, 1923, as prayed for by the plaintiffs in error, and that the order made by the trial court, after judgment, appointing a receiver for the property, be vacated, the receiver discharged, and the property restored to plaintiffs in error.
By the Court: It is so ordered.