No. 56,608

STATE OF KANSAS, *ex rel.*, HARVEY L. LUDWICK, SECRETARY OF HUMAN RESOURCES, *Appellant*, v. VIRGINIA ANNE BRYANT, *Appellee*.

(697 P.2d 858)

Opinion filed April 5, 1985.

*H. Dean Cotton*, of Topeka, argued the cause and was on the briefs for the appellant.

*Robert E. Keeshan*, of Hamilton, Peterson, Tipton, Muxlow & Keeshan, of Topeka, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is a suit on a guarantee executed by Virginia Anne Bryant in which she personally guaranteed payment of a debt of Tender Loving Care, Inc., a corporation which she owned and operated. Bryant moved for summary judgment on the grounds the guarantee lacked consideration. The trial court sustained the motion and the State Department of Human Resources appeals.

Tender Loving Care, Inc., (TLC) was a Kansas corporation organized in October, 1977. During its existence TLC provided day-care services in east Topeka. On February 15, 1982, the corporate charter was cancelled by the Secretary of State for failure to correct and return the 1980 corporate annual report.

On July 31, 1981, TLC filed its second-quarter wage report with the Kansas Department of Human Resources (Human Resources). Its check drawn by Bryant on the corporate account for $231.79 was returned for insufficient funds.

TLC stopped all operations in August, 1981. It has not been reopened and Bryant testified she has no intention of reopening the business.

On October 21, 1981, Virginia Bryant individually filed a petition in bankruptcy. Human Resources was listed as a creditor. It filed a proof of claim in Virginia Bryant's bankruptcy. On April 29, 1982, appellee Bryant received a discharge in bankruptcy. The debt owed by TLC to Human Resources was not allowed in the bankruptcy action since Bryant was held not to be personally liable to the State for the taxes of TLC. Thus, after the discharge of Bryant, Human Resources had still not been paid. In their motions arguing summary judgment, both parties agreed that the debt was owed by TLC and Bryant had no personal liability for its payment.

On July 12, 1982, Bryant was contacted by a representative of Human Resources. She was asked to come to its offices, which she did. When she arrived at the offices of Human Resources she was told she needed to pay the $231.79 debt of TLC. Bryant advised the department she had been discharged in bankruptcy. Department officials told her that State unemployment taxes cannot be discharged by the bankruptcy court and she needed to pay the debt.

Bryant advised Human Resources three or four times that she wished to check with her attorney. She placed a telephone call to

him, but she was unable to reach him. Bryant made no attempt to leave the offices of the department or to terminate the conversation as a result of her inability to speak with her lawyer. The discussion continued.

Another Human Resources official then spoke with Bryant. The man advised Bryant the debt of TLC was not excused or discharged and she needed to sign a personal guarantee to set up a payment plan. Bryant was then presented with a typed guarantee. After further urging by Human Resources officials, Bryant signed the personal guarantee agreement.

The agreement stated the guarantor, Bryant, is or had been operating a corporation under the name of Tender Loving Care, Inc., and that the guarantor wished to personally guarantee to the Department of Human Resources the debt owed by TLC. The agreement bound the guarantor to pay all future contributions, penalties and interest that became due. A payment schedule was set up in the agreement calling for payments of $85 on the first day of each month starting August 1, 1982. The agreement further stated in the event the business closed for any reason during the term of the personal guarantee the entire balance would become payable and due immediately.

After signing the agreement, Bryant contacted her attorney. On July 14, 1982, her attorney wrote to the Department of Human Resources stating the debt covered by the personal guarantee was discharged in bankruptcy and, further, the guarantee was without consideration. On April 15, 1983, the department filed an action in state court against Bryant for $267.02.

Bryant filed an answer in the state action and a motion for citation and accusation in contempt in U.S. Bankruptcy Court against Human Resources. Human Resources filed a motion to dismiss the contempt action. The contempt matter was heard and it was held there was no debtor-creditor relationship between Bryant and the State of Kansas in the bankruptcy case. The action was therefore dismissed.

Bryant then filed a motion for summary judgment in the state court action. She alleged her guarantee lacked consideration and was the result of misrepresentation, fraud and duress. The trial court sustained the motion finding the guarantee failed for lack of consideration. The Department of Human Resources appeals.

The first issue raised is whether the trial court erred in holding

there was not consideration to support the guarantee of Virginia Bryant.

It is a longstanding rule of law that for a contract to be enforceable it must be supported by consideration. *Temmen v. Kent-Brown Chevrolet Co.*, 217 Kan. 223, 535 P.2d 873 (1975). The parties agree no consideration is stated on the face of the guarantee involved in this case.

Appellant Human Resources first argues every written contract in Kansas has consideration by virtue of the contract being written. For support appellant cites K.S.A. 16-107, which states:

"All contracts in writing, signed by the party bound thereby, or his authorized agent or attorney, shall import a consideration."

Appellant suggests "imports" means "absolutely exists." We disagree. The statute means if a contract is written the existence of consideration is presumed unless the lack of consideration is raised as an affirmative defense and is proved by substantial competent evidence. See K.S.A. 16-108 and *Ferraro v. Fink,* 191 Kan. 53, 56, 379 P.2d 266 (1963).

Appellant next argues, regardless of the statute, there was consideration given in this case. We have held consideration is sufficient if there is a benefit to the debtor or an inconvenience or deprivation to the creditor, such as a promise by the creditor to refrain from legal proceedings or an extension of time within which the debtor may pay the creditor. *Woodman v. Millikan,* 126 Kan. 640, 642, 270 Pac. 584 (1928). Appellee Bryant argued at trial there was no consideration in the form of a benefit to the guarantor, Bryant; the debtor, TLC; or an inconvenience or deprivation to Human Resources. The trial court concurred with appellee and held there was no consideration.

Appellant argues there was a benefit to the guarantor, Virginia Bryant, because the agreement allowed her to make monthly payments rather than one payment. Clearly there is no benefit to Bryant. By the guarantee agreement she agreed to pay a debt which she had no obligation to pay.

The next question is whether there was consideration in the form of a benefit to the debtor, TLC. Appellant contends TLC was benefited by having its debt paid, by being allowed to pay its debt in installments, and by not being sued for its debt by Human Resources.

Appellee argues there was no benefit to TLC. First, the

agreement on its face does not relieve the corporation of its obligation to pay. As previously discussed, however, pursuant to K.S.A. 16-107, a contract need not state on its face the consideration given. Additionally, appellant argues it does not want to release TLC from its debt and rely only upon Bryant. Rather, it wants Bryant in a traditional guarantor status where she pays the debt only if TLC defaults. Despite the seeming logic of this argument, it is important to note TLC is already in default. Its debt is long overdue. It is no longer operating and receiving fees. Its charter has been cancelled and it has no assets and many liabilities. Therefore, there is no benefit to TLC since it was in default and unable to pay the debt prior to the guarantee. The guarantee serves only to create a new obligation, that of requiring Bryant to pay a debt she did not owe. Hence, the benefit to TLC is illusory since the corporation cannot pay the debt and Bryant clearly received no benefit from the agreement.

Bryant also argues there is no benefit to TLC since mere forbearance from suit or delay in collection of payments without an agreement to do so is not legal consideration. See 17 Am Jur. 2d, Contracts § 114, p. 461. Here there was such an agreement, the guarantee. Human Resources did not just happen to forbear from suit against TLC, rather it agreed not to sue on its debt as long as Bryant would pay. This part of Bryant's argument is without merit. See *Burnett v. Turner*, 105 Ark. 290, 151 S.W. 249 (1912), and *Linvitz v. Galeckis*, 110 Conn. 174, 147 A. 592 (1929).

The question then turns to whether there was an inconvenience to Human Resources by forbearing from suing TLC and agreeing to accept payment in installments, rather than suing for the full amount to which it was entitled in one payment. Bryant argues there was no such benefit.

The crux of Bryant's argument is that the agency's claim against the corporation was worthless, and as such it provides no consideration to support the contract. The trial court agreed. For support appellee Bryant cites 17 Am. Jur. 2d, Contracts § 116, p. 463, which states:

"It has been declared that a promise in consideration of forbearance is not binding if there was originally no right or cause of action or if the claim threatened to be enforced was invalid and worthless, groundless or unfounded, or not even doubtful, colorable, or plausible, or if no claim was ever made or asserted. Similarly, it has been held that an extension of time to pay a clearly invalid claim is not a valid consideration for a contract."

Kansas has adopted this rule in *Snuffer v. Westbrook*, 134 Kan. 793, 8 P.2d 950 (1932), wherein we held:

"Any forbearance to prosecute or defend a claim or action, or to do an act which one is not legally bound to perform, is usually a sufficient consideration for a contract based thereon, unless the claim or defense is obviously invalid, worthless or frivolous."134 Kan. at 793, Syl. ¶ 1.

Human Resources argues its claim against TLC was not worthless in spite of the cancellation of the corporate charter since a corporation is perpetual pursuant to K.S.A. 1984 Supp. 17-6002 and K.S.A. 17-6102 and the debt was legally owed.

The two statutes cited by appellant state a corporation is of perpetual existence, unless it is otherwise stated in the articles of incorporation. K.S.A. 1984 Supp. 17-6002(b)(5) and K.S.A. 17-6102(1). The articles of incorporation are not contained in the record here. We have held the burden is upon an appellant to designate a record sufficient to present its points to this court, and to establish claimed error. *First Nat'l Bank & Trust Co. v. Lygrisse*, 231 Kan. 595, 602, 647 P.2d 1268 (1982). Thus, this argument is without sufficient support in the record to warrant discussion.

Appellant Human Resources also argues that the claim was not worthless since it was a debt legally owed. The issue is not the validity of the debt, but whether the entity which owes the debt is viable. Substantiating this, Professor Corbin in his treatise on contracts states: "[I]t is said that even though a claim is perfectly valid, forbearance to press it is not a sufficient consideration if there is no possibility of enforcement and collection, making both the claim and the forbearance valueless." 1 Corbin on Contracts § 140, pp. 600-01 (1963). See also 1 Williston on Contracts § 135, p. 478 (rev. ed. 1936). This issue is without merit.

As authority for their positions both appellant and appellee cite *Home State Bank v. DeWitt*, 121 Kan. 29, 245 Pac. 1036 (1926). In that case, a father co-signed notes for his son, Ralph DeWitt. Ralph was unable to pay his notes and had no property from which a judgment could be collected. In finding there was sufficient consideration to support the agreement by the father to accept the debts of the son, this court stated:

"The fact that Ralph M. DeWitt was unable to pay his notes, and that he had no property from which a judgment upon them could be collected, did not prevent

their surrender from constituting a sufficient consideration for the new notes. The relinquishment of an existing obligation by the obligee is a good consideration for a contract however faint may be the prospect of realizing upon it. The release of a note given by a man who has later died leaving no estate does not form a sufficient consideration for a new note, because it is legally worthless, not being a claim against any person or property. Citation omitted. A note executed by a person who is still alive cannot be said as a matter of law to be without value, although the maker is wholly without present means." 121 Kan. at 31.

This is the majority view in the United States. See 17 Am. Jur. 2d, Contracts § 112, p. 459.

Here, however, we are not concerned with a person, but rather a corporation. Bryant argues the defunct corporation is comparable to the deceased in *Home State Bank*. In support, appellee cites *Bradstreet v. Crosbie*, 123 Okla. 269, 253 Pac. 63 (1926). In *Bradstreet* a note and mortgage were given by a corporation's president to secure the payment of an indebtedness owed by the corporation. At the time the president's note was given, the corporation was insolvent and the corporate note was worthless. The Oklahoma court held there was no consideration for the subsequent note due to the corporate insolvency. See also *Pacific Rys. Advertising Co. v. Carr*, 29 Cal. App. 722, 157 Pac. 529 (1916); *Trust Co. v. McDougald*, 132 Tenn. 323, 178 S.W. 432 (1915).

Hence, the debt owed by TLC, despite its validity, was unenforceable and Human Resources' agreement to forbear was without consideration due to the worthlessness of its claim against TLC.

We hold there was no consideration to support appellee's execution of the guarantee. The judgment of the trial court is affirmed.

SCHROEDER, C.J., not participating.