34 F.3d 1076
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 MASTER MORTGAGE INVESTMENT FUND, INC., Plaintiff-Appellant,
v.
CHICAGO TITLE INSURANCE COMPANY, Defendant-Appellee.
 No. 93-3153.
 United States Court of Appeals, Tenth Circuit.
 Sept. 6, 1994.
 
 Before BRORBY, SETH, and EBEL, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 Plaintiff-Appellant Master Mortgage Investment Fund ("MMIF") appeals from the district court's grant of summary judgment to Chicago Title Insurance Co. ("Chicago Title") in this diversity contract case. MMIF alleges that Chicago Title, acting as escrow agent in a real estate transaction, entered into a binding promise to pay MMIF proceeds from the sale. The district court found that MMIF had failed to create a triable issue of fact regarding: 1) whether there was consideration to support the alleged contract; or 2) whether MMIF could show reasonable reliance on Chicago Title's promise sufficient to support a promissory estoppel claim. We affirm.
 
 I. FACTS
 
 2
 MMIF loaned $6.4 million to Oppenheimer Industries and the Armendaris Corporation in 1989. Oppenheimer owned 100% of Armendaris. The loan was secured by a security agreement that gave MMIF the rights to the proceeds from certain properties, including one in Clovis, California. This property was held in trust by Oppenheimer for the benefit of other business organizations, including Armendaris. Armendaris had a beneficial interest in 84.5% of the trust assets. MMIF filed a UCC-1 Financing Statement on the Clovis property to perfect its security interest. Importantly, the security interest did not create a lien on the property itself, but only in proceeds of the property.
 
 
 3
 Subsequent to the closing of the loan, Oppenheimer contracted to sell the Clovis property to Westcal, Inc. The parties to the transaction scheduled the sale for a date on or before May 17, 1990. In February 1990, Oppenheimer and Westcal retained Defendant-Appellee, Chicago Title, to act as their escrow agent.
 
 
 4
 Chicago Title discovered the MMIF financing statement as part of its work on the account. On April 4, 1990, it sent a standardized demand form to MMIF for MMIF to report any claims it had pertaining to the Clovis property. Because MMIF did not immediately reply, Chicago Title sent two more demands. Finally, MMIF sent a demand letter to Chicago Title on May 8 through its counsel, Marcia Charney (the "Charney Letter"). The letter asked Chicago Title to remit $362,990.87 to MMIF at the close of escrow, which represented the cash proceeds due to Oppenheimer at closing of the Clovis sale. In addition, the letter stated that MMIF had an interest in the noncash proceeds of the sale, in particular a promissory note for the balance of the purchase price. The letter demanded that Chicago Title send MMIF copies of the promissory note and deeds of trust, so that MMIF could prepare assignments. At the end of the MMIF demand, the letter read: "Please sign below acknowledging your agreement to proceed and deliver the above-described documents and funds in accordance herewith. Please immediately return a signed copy of this letter to Marcia L. Charney."
 
 
 5
 On May 10, Chicago Title's escrow officer for this transaction, Gwen Roberts, signed the letter and returned a copy to MMIF. MMIF argues that this created a contract or an enforceable promise. Chicago Title sent the requested documents the next day.
 
 
 6
 Also on May 11, Oppenheimer wrote to Chicago Title and informed it that there were problems with the sale that would indefinitely delay it. Further, it stated that "the escrow demand of [MMIF] is improper in that they are not entitled to an interest in noncash proceeds, and you should not deliver a copy of the promissory note and deed of trust as requested." Aplt.App. at 1-10. A copy of this letter was sent to Charney.
 
 
 7
 Without MMIF's knowledge, the sale took place on June 29. MMIF learned about the sale in August, when it called Chicago Title for the first time after the Charney letter. Roberts told MMIF that Chicago Title had given the proceeds to Oppenheimer because Oppenheimer directed it to do so. Oppenheimer and Armendaris subsequently filed a petition for bankruptcy under Chapter 11 of the Bankruptcy Code.
 
 
 8
 MMIF filed this diversity action, claiming that the Charney letter, signed by Roberts, formed an enforceable promise that Chicago Title breached by giving the cash and noncash proceeds of the Clovis sale to Oppenheimer.
 
 
 9
 Chicago Title moved for summary judgment, arguing that there was no evidence or legal argument to support MMIF's theory that it breached any agreement. The district court agreed with Chicago Title and found that: 1) there was no consideration to support the alleged agreement of the Charney letter, because there was no evidence that there was an agreement that MMIF would forbear on its legal rights; and 2) promissory estoppel did not make the alleged promises enforceable because MMIF could not have reasonably relied upon them. The district court also alternatively held that MMIF had made no legitimate argument that it was entitled to the noncash proceeds as against Chicago Title. MMIF moved for a reconsideration of the decision, advancing the same arguments it had made in its initial action and inserting new ones. The district court determined that the new arguments were raised impermissibly late and that the old arguments were unpersuasive. MMIF took this appeal.
 
 II. STANDARD OF REVIEW
 
 10
 We review the grant of summary judgment de novo, using the same standard as the district court. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). Summary judgment is appropriate where there is no genuine dispute over a material fact, viewing all evidence and inferences in favor of the party opposing the motion. Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.1991).
 
 III. CONSIDERATION
 
 11
 We review MMIF's substantive contract claims under Kansas law. First, we review MMIF's claim that the district court erred in finding no consideration. Both sides acknowledge that "[I]t is a longstanding rule of law that for a contract to be enforceable it must be supported by consideration." State ex rel. Ludwick v. Bryant, 697 P.2d 858, 861 (Kan.1985). MMIF alleges that Chicago Title's promise to provide MMIF the proceeds of the Clovis real estate transaction is supported by two types of consideration: 1) MMIF's reply to Chicago Title's repeated requests for MMIF's demand; and 2) MMIF's forbearance from taking legal or other actions that might have imperiled or delayed the real estate transaction and escrow.
 
 
 12
 MMIF did not raise its first argument for finding consideration in any of its memoranda responding to Chicago Title's motion for summary judgment. The argument first arose in MMIF's "Suggestions in Support of Motion for Reconsideration," filed after the district court granted Chicago Title's summary judgment motion. In the absence of cause, we will not address issues that could have been raised in the pleadings, memoranda, or motions prior to the district court's ruling, but were instead raised after the district court ruled. Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir.1991), cert. denied, 113 S.Ct. 89 (1992). Since MMIF has not shown cause why we should consider the late argument on its first theory of consideration, we decline to address it.
 
 
 13
 MMIF's alternative theory that its forbearance provided sufficient consideration was raised prior to summary judgment. Forbearance from suit or delay in collection can provide consideration sufficient to support a contract, but only if there is an agreement between the parties for the forbearance. Bryant, 697 P.2d at 861-62.
 
 
 14
 MMIF argues that it forbore from suit to protect its alleged security interest in the proceeds of the Clovis sale, and that evidence of an agreement for this forbearance can be found in the circumstances surrounding the letters between it and Chicago Title.[2] However, MMIF never explains what actions it could have taken to protect its interests or exactly from what it forbore, other than vaguely asserting that it could have brought actions for a constructive trust, injunctive relief, lis pendens, or a declaratory judgment. MMIF provides no evidence or legal authority for the actions it could have taken to stop or delay the sale or attach the proceeds. MMIF did not have any lien on the property itself, only the proceeds, and thus it remains uncertain just how it could have stopped or slowed the sale. Our role is not to divine what arguments a litigant could have made. Having no clear sense of the actions from which MMIF alleges it forbore, we thus affirm the district court's grant of summary judgment on this issue. See Bryant, 697 P.2d at 862 (forbearance from suit is not sufficient consideration if the claim or defense that could have been raised is invalid, worthless, or frivolous).
 
 
 15
 In addition, given the vagueness of the alleged forbearance, we discern no evidence that the parties agreed to the forbearance as required in Bryant, 697 P.2d at 861-62. MMIF alleges that Chicago Title agreed to the forbearance because it wished to close the Clovis deal quickly to collect its fees. However, MMIF provides no evidence or analysis regarding how it would have legally impeded the sale or the escrow closing. Given this void, we agree with the district court that there is no material fact question regarding the existence of an agreement to forbear from legal action.
 
 IV. PROMISSORY ESTOPPEL
 
 16
 In the alternative, MMIF claims that even if there was no consideration to form a contract, MMIF is entitled to rely on the theory of promissory estoppel.
 
 
 17
 In order for the doctrine of promissory estoppel to be invoked as a substitute for consideration, the evidence must show: (1) The promisor reasonably expected the promisee to act in reliance on the promise, (2) the promisee acted as could reasonably be expected in relying on the promise, and (3) a refusal of the court to enforce the promise would sanction the perpetration of fraud or result in other injustice.
 
 
 18
 Mohr v. State Bank of Stanley, 770 P.2d 466, 481 (Kan.1989).
 
 
 19
 We agree with the district court that MMIF has failed to show the second requirement, that it reasonably relied upon Chicago Title's promise. Chicago Title, as an escrow agent, was bound by the instructions of its principals, Oppenheimer and Westcal. Osborn v. Grego, 596 P.2d 1233, 1237 (Kan.1979). It had no independent authority to bind its principals or incur obligations on their behalf. MMIF, not a party to the real estate transaction and thus not a principal, had knowledge of the instructions governing Chicago Title prior to Chicago Title's alleged promise to MMIF. These instructions did not include any disbursement to MMIF and required that any changes be made in writing. We are aware of no such written changes. As a sophisticated commercial party with experience in real estate transactions, MMIF should have known that Chicago Title could not bind its principals. In this context, a reasonable jury could not conclude that MMIF's reliance on Chicago Title's promise was reasonable. Accordingly, we affirm the district court's grant of summary judgment against MMIF on the promissory estoppel issue.
 
 
 20
 Alternatively, we conclude that even if a jury could have found MMIF's reliance to be reasonable, MMIF has not provided evidence to show that our enforcement of Chicago Title's promise is necessary to avoid injustice. As part of this third requirement for promissory estoppel, the Supreme Court of Kansas has held that "promissory estoppel should be applied only if a refusal to enforce it would be virtually to sanction the perpetration of fraud or would result in other injustice." Kirkpatrick v. Seneca Nat'l Bank, 515 P.2d 781, 787 (Kan.1973) (quoting Marker v. Preferred Fire Ins. Co., 506 P.2d 1163, 1170 (Kan.1973)) (emphasis added). Accord Restatement (Second) of Contracts 90(1) ("A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.") (emphasis added).[3]
 
 
 21
 In this case, the alleged injustice and injury visited upon MMIF is that it did not receive the proceeds of the Clovis sale by Oppenheimer. As MMIF strenuously points out, however, both Oppenheimer and Armendaris had the primary contractual obligation to satisfy their joint loan from MMIF and to protect MMIF's security interest in the proceeds of the sale of the Clovis property. Aplt. Reply at 1-3. MMIF fails to demonstrate why recovery from these sources will be impossible, such that enforcing Chicago Title's promise is the only way to avoid injustice. MMIF does allege that Oppenheimer and Armendaris have filed for bankruptcy under Chapter 11 of the Bankruptcy Code and that any attempt to collect the proceeds from them is currently barred by the automatic stay provisions of 11 U.S.C. 362. However, "[a]lthough the automatic stay protects a debtor from various collection efforts over a specified period, it does not extinguish or discharge any debt." Pennsylvania Dep't of Public Welfare v. Davenport, 495 U.S. 552, 560 n. 3 (1990). Thus, the mere allegation that Oppenheimer and Armendaris are in Chapter 11 is insufficient to demonstrate that recovery of the sale proceeds will not be possible. MMIF does not direct us to any other evidence or theory to show that recovery from Chicago Title is the only way to prevent an injustice. Thus, MMIF fails to provide any evidence to meet its burden of showing that it is equitably necessary to enforce Chicago Title's promise.
 
 V. EQUITABLE ESTOPPEL
 
 22
 Finally, MMIF argues that Chicago Title should be equitably estopped from disputing the enforceability of its promise because its silence induced MMIF into believing that an agreement for payment existed and that the closing was indefinitely postponed, keeping it from protecting its rights. Chicago Title claims that MMIF did not properly argue this point before the district court prior to the grant of summary judgment and that we should affirm on that basis. See Van Skiver, 952 F.2d at 1243 (advancing new arguments that could have been raised when original summary judgment motion was briefed is inappropriate). It is true that MMIF first brought an argument labelled as equitable estoppel in its motion to reconsider the district court's summary judgment order. Aplt.App. at 11-12 to 11-17. However, MMIF did argue essentially the same point prior to the summary judgment order, albeit characterizing the issue as a waiver argument. Aplt.App. at 6-10 to 6-11. We will thus address the issue on the merits, despite the fact that the district court did not address the equitable estoppel claim.
 
 
 23
 "Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct.' " Turon State Bank v. Bozarth, 684 P.2d 419, 422 (Kan.1984) (quoting Levi Strauss & Co. v. Scheaffer, 8 Kan.App.2d 117, 122, 650 P.2d 738 (1982)).
 
 
 24
 "A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts." ... [I]n order for a party to be estopped by silence, the complaining party must show (1) the silent parties' intent to mislead or willingness to deceive, (2) knowledge or reason to suppose that someone is relying on that silence, and (3) as a result of that reliance, that someone is acting or about to act as he or she would not otherwise act.
 
 
 25
 City of Olathe v. Stott, 861 P.2d 1287, 1293 (Kan.1993) (quoting Holley v. Allen Drilling Co., 740 P.2d 1077, Syl. 1/2 4 (Kan. 1987)). "There can be no equitable estoppel if any essential element thereof is lacking or is not satisfactorily proved." Tucker v. Hugoton Energy Corp., 855 P.2d 929, 937 (Kan.1993).
 
 
 26
 At the minimum, we believe that MMIF has failed to show a genuine issue of fact regarding whether Chicago Title had the intent to mislead MMIF or allow MMIF to be misled. There is evidence in the record that Chicago Title's escrow officer for the transaction, Gwen Roberts, told MMIF that the failure to inform it of the closing without honoring the demand was accidental. Further, Roberts' superior at Chicago Title allegedly instructed Roberts to inform MMIF that the closing would proceed without honoring MMIF's demand. To rebut this and establish an intent to deceive, MMIF points to two notes in the record, apparently written by Roberts, that suggest that Oppenheimer wanted to close the transaction as quickly as possible without paying MMIF. MMIF argues again that Chicago Title had a motive to keep MMIF in the dark so that it could quickly close the deal without risk of legal action by MMIF--thus establishing an intent to deceive. Again, however, MMIF's chain of reasoning founders on its failure to explain what meritorious actions it could have taken to delay or stop the sale. Without this information, we cannot infer that Chicago Title had any motive--and thus intent--to mislead MMIF. In the absence of a genuine issue of fact on this question, we conclude that MMIF's equitable estoppel argument does not require us to disturb the district court's dismissal of the case on summary judgment.
 
 
 27
 Accordingly, we AFFIRM the district court's grant of summary judgment to Chicago Title.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 MMIF relies on four pieces of evidence to establish forbearance, and Chicago Title challenges these items as improper. The first is a letter from MMIF's counsel to attorneys in California, written after Chicago Title's alleged promise, requesting advice regarding how to protect MMIF's security interest. In addition, MMIF points to three letters from MMIF to Oppenheimer inquiring about the status of the Clovis property transaction. This evidence was first presented to the district court as part of MMIF's motion to reconsider the grant of summary judgment. However, advancing evidence in a motion to reconsider that was available when the original summary judgment order was briefed is inappropriate. Van Skiver, 952 F.2d at 1243. Thus, in the absence of any showing that the evidence was unavailable earlier, we disregard this late evidence
 
 
 [3]
 Section 90 of the Restatement (Second) of the Law of Contracts "has long been recognized and relied upon by [the Kansas Supreme Court]." Kirkpatrick, 515 P.2d at 786; EDO Corp. v. Beech Aircraft Corp., 911 F.2d 1447, 1454 n. 7 (10th Cir.1990)