NOT DESIGNATED FOR PUBLICATION

No. 115,307

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE MATTER OF THE ESTATE OF
EDWARD H. ISERN, DECEASED.,

MEMORANDUM OPINION

Appeal from Barton District Court; MIKE KEELEY, judge. Opinion filed December 9, 2016. Affirmed.

*Brock R. McPherson*, McPherson & McVey Law Offices, Chtd., of Great Bend, for appellant.

*Larry E. Keenan*, Keenan Law Firm, P.A., of Great Bend, for appellee.

Before GARDNER, P.J., ATCHESON, J., and STUTZMAN, S.J.

*Per Curiam*: Edward H. Isern (decedent), also known as Edward H. Isern, Jr., and Edward H. Isern, II, died testate in Kansas in 2012. The decedent was survived by his wife, Marianne A. Isern, and his two adult children, Edward H. Isern, III, and Kristine Whiston, formerly known as Kristine Isern (the children). Marianne is the Executor of the Estate of Edward H. Isern, deceased, and is the sole devisee and legatee named in the Last Will and Testament of the decedent, dated April 27, 2011.

As executor of the estate, Marianne filed the inventory and the petition for final settlement of the estate in September 2013. The petition stated that the decedent was the owner of overriding royalty and working interests in various oil and gas leases, which were described in the petition. According to Marianne, these leases had been assigned to the decedent prior to his death and now belong to the estate. The children objected to the

1

estate inventory and filed an answer and written defenses to the petition for final settlement. The children denied that the decedent owned all of the overriding and working oil and gas lease interests listed in the petition.

The parties agree the leases had been included as assets in a revocable living trust created by the decedent's mother, Marian Shonyo Isern, also known as Marian Isern. According to that trust, the decedent was the son of Edward H. Isern, Sr., who died on July 18, 1954. Under the provisions of the Last Will and Testament of Edward H. Isern, Sr., one-half of the residuary estate was given, devised, and bequeathed to his wife, Marian Isern. The remaining one-half interest of the residuary estate was given, devised, and bequeathed to Marian as trustee for their children—the decedent and his sister, Mary Ann (Isern) Deen. In the journal entry of final settlement of Edward H. Isern, Sr.'s estate, one-half interest of various oil and gas leases was assigned to Marian as testamentary trustee for the decedent and his sister. In December 1993, Marian executed a revocable living trust. According to the terms of the trust, four sub-trusts were to be established upon Marion's death—"Trust A" for the benefit of the trustor's son, the decedent; "Trust B" for the benefit of the trustor's daughter, Mary Ann Deen; "Trust C" for the benefit of the trustor's son, the decedent, which was to be an amount equal to one-half of the balance of the trust estate; and "Trust D" for the benefit of the trustor's daughter, which was to be an amount equal to one-half of the balance of the trust estate.

The parties agree that Trusts A and B were never established. The parties also agree that Trusts C and D were established with Bank IV Kansas, N.A., as the original designated corporate successor trustee. The trustee of Trust C was directed to pay the net income from Trust C to or for the benefit of the decedent, in quarterly or other more frequent convenient installments, until the termination of the trust. Under the terms of the trust, the trustee was authorized to pay or apply, for the benefit of the decedent from the principal of Trust C, such sums as it determined to be necessary for the health, education,

2

and support of the decedent. Trust C was to terminate upon the death of the decedent, with the remaining assets to be distributed to his surviving issue in equal shares.

On January 29, 1996, Bank IV, N.A., successor to Bank IV Kansas, N.A., as Trustee of the Marian Isern Revocable Living Trust under trust agreement dated December, 30, 1993, executed an assignment of the Shultz oil and gas lease to the decedent. The trustee assigned all of the assignor's "right, title and interest of every kind and character" owned by the Marian Isern Trust C in the Schultz lease. Then, on July 2, 2002, the new successor trustee, Colorado Community First Bank, executed assignments of oil and gas leases—assigning to the decedent, the undivided working interest owned by Trust C in the following oil and gas leases located in Kansas:  Karlin Lease; Schmeidler A Lease; Ruppenthal Lease; Meharg J.W. Lease; Flora Lease; Lischesky Lease; Nettie Unit; Grant Lease; Langrehr Lease; Ringering Lease; Hilgenberg A Lease; and Hilgenberg B Lease.

The children objected to the inventory filed by the estate and challenged the decedent's ownership of the above-mentioned oil and gas leases. The executor of the estate filed a motion for summary judgment arguing the leases had been assigned to and purchased by the decedent. Furthermore, the executor argued the children's claims were barred by the statute of limitations under K.S.A. 60-513 and/or K.S.A. 60-511. The children filed a cross-motion for summary judgment arguing the leases had been fraudulently assigned and that no consideration was given for the assignment of these leases. They further claimed the statute of limitations and statute of repose had not run on all possible claims.

After reviewing the documentation and the exhibits and hearing brief oral arguments, the district court granted the motion for summary judgment in favor of the executor of the estate and denied the children's motion. The district court held that the transfers made on July 1, 2002, were recorded, providing notice to any and all parties

including the public and the surviving heirs pursuant to K.S.A. 58-2221 and K.S.A. 58-2222. The district court held that the children knew, should have known, or could have known the assignments occurred, and therefore the statute of limitations under K.S.A. 60-513 and K.S.A. 60-511 had run. The district court further held that no evidence was presented by any party regarding concealment or fraud; thus, the statute of limitations was not tolled. Moreover, regarding the claim for lack of consideration, the district court noted this was an affirmative defense and the burden of proof was on the objecting party to prove no consideration was given. The district court found that under the laws of Kansas, consideration is presumed unless sufficient evidence establishes consideration was not given. The district court found the assignments were supported by consideration. The children timely appeal.

*Standard of review*

We first set forth our standard of review.

"'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citation omitted.]" *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 622, 345 P.3d 281 (2015).

Where, as here, there is no factual dispute, appellate review of an order regarding summary judgment is de novo. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013).

4

*Did the district court err by finding the assignments were supported by consideration?*

We first address the children's argument that the district court erred in finding consideration had been given for the assignments "because there was no evidence to the contrary." The children argue that evidence was presented—the bank records at the time of the assignments show there was no "consideration going into the trust checking account."

The parties do not dispute that consideration is generally presumed in written contracts. "If a contract is written, the existence of consideration is presumed unless the lack of consideration is raised as an affirmative defense and is proved by substantial competent evidence." *State ex rel. Ludwick v. Bryant*, 237 Kan. 47, Syl. ¶ 2, 697 P.2d 858 (1985). The children contend they met their burden to come forward with evidence to establish a dispute as to the material fact of consideration.

In support of their claim of fraud, the children rely solely on lack of consideration at the time the decedent obtained the leases. The children do not show how a lack of consideration constitutes fraud or constructive fraud, apparently assuming it is necessarily so. No citation to any legal authority is given in support of that assumption. Although we would be on good grounds to dispose of this appeal on procedural grounds given the undeveloped facts and arguments in the children's four-page brief, see *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013), we prefer to rule on the merits and thus assume without deciding that the children properly pleaded a claim of fraud and properly preserved it on appeal.

The only evidentiary support for the children's proposition that no consideration was given was a 2015 affidavit from their attorney's office assistant, Mona Stos. Her affidavit states solely that as an employee of McPherson & McVey Law Offices, Chtd., she personally reviewed the Trust's "bank records from the period of time from prior to

5

August 1, 2012," and "that [her] review of said bank records reveal[s] that no deposits were made into the bank account for the Edward Isern Irrevocable Trust C during the months leading up to August 1, 2012."

This affidavit is so vague with respect to the dates of the bank records Ms. Stos reviewed as to render the affidavit immaterial. Her statement that she reviewed the records "during the *months* leading up to August 1, 2012," creates a reasonable inference that she did not review the Trust's bank records in *years* prior to 2012. (Emphasis added.) Most importantly, the affidavit fails to raise a reasonable inference that she reviewed the bank records for the relevant dates on which any consideration for the leases would most likely have been deposited into the Trust account—the dates the deeds were assigned and recorded in 1996 and 2002. The Stos affidavit thus fails to constitute substantial competent evidence as is necessary to overcome the presumption of consideration and fails to present a material question of fact regarding lack of consideration.

In contrast, the district court reviewed evidence showing that consideration for the assignments had been paid. First, the documents filed of public record state the assignor "does hereby sell, assign, transfer, and set over unto" the decedent the oil interests at issue in this case. The assignments are all signed by the Trustee of the Trust.

Second, the affidavit of Marianne A. Isern, the executor and surviving spouse, shows that her husband purchased the working interests at issue in this case. Her affidavit states her personal knowledge that sometime prior to July 2002, the Trustee of the Trust asked the decedent to purchase the leases, and he did so.

> "[S]ome time prior to July of 2002, my husband . . . was contacted by the Colorado bank then acting as the Trustee of . . . Trust C . . . asking him to purchase the working interests owned by the Marian Isern Trust C, as the Bank was not comfortable owning

6

working interests in oil and gas leases because of the unpredictable monthly expenses with regard to operating costs and possible future drilling on the leases.

"[B]ecause my husband was the lifetime income beneficiary under the Marian Isern Trust C and owned working interests in many of the same oil and gas leaseholds in his individual name as did the Marian Isern Trust C, he agreed to purchase the working interests from the Trustee Bank."

Further, Kansas courts have long recognized that consideration need not be in the form of a deposit into a bank account.

"Consideration comes in all types and sizes. Consideration need not be something of pecuniary value or reducible to such value in order to support a contractual promise. See *In re Estate of Shirk*, 186 Kan. 311, 321-22, 350 P.2d 1 (1960) ('To be sufficient, the consideration agreed upon must be a legal benefit or detriment, and need not be a thing of pecuniary value or reducible to such value.')" *Murphy v. Convey*, No. 90,125, 2004 WL 421991, at *3 (Kan. App. 2004) (unpublished opinion).

Marianne A. Isern's affidavit, coupled with the presumption of consideration and the rule of law that consideration need not be something of pecuniary value, shows there is no genuine issue of material fact as to whether consideration was given for the relevant assignments. Consideration was given. No other evidence of fraud was presented.

The parties raise no other challenge to the district court's conclusion that the applicable statute of limitations set forth in K.S.A. 60-513 and 60-511 had run. They contend the following: that in actions involving fraud, the statute of limitations does not begin to run until the fraud is discovered; that the fraud could not have been discovered here until the inventory was filed; and that the statute of repose does not apply to actions based in fraud. See *Jennings v. Jennings*, 211 Kan. 515, 527, 507 P.2d 241 (1973). But these are all fraud-based premises that are unsupported by any evidence of fraud.

Accordingly, we affirm the grant of summary judgment to the executor.

Affirmed.

* * *

ATCHESON, J., concurring: I, too, would affirm the judgment of the Barton County District Court denying the challenge from the children of Edward H. Isern to exclude various oil and gas leasehold interests from his probate estate. But I want to underscore the narrow basis on which I reach that conclusion—a basis that I believe also informs the panel's decision.

Isern's mother created a trust that included the disputed oil and gas interests. Under the terms of the trust, Isern was to receive the income generated from the trust assets during his lifetime, and upon his death the property in the trust was to be distributed to his surviving children. Years ago, however, the trustee transferred the oil and gas interests to Isern, thereby removing them from the trust. So when Isern died, those interests were included in his probate estate and would go to his widow rather than to his children.

The children have alleged the assignments of the oil and gas interests from the trust to Isern were not supported by any consideration. That is, Isern exchanged nothing of legal value for them. The children contend that makes the assignments fraudulent or, at the very least, void. The children do not argue that Isern gave *some* consideration, albeit inadequate, to trust for the assignments.

The executor of the estate filed a motion for summary judgment on the grounds that the assignments recited consideration and Kansas law presumes consideration for written contracts. *State ex rel. Ludwick v. Bryant*, 237 Kan. 47, Syl. ¶ 2, 697 P.2d 858

8

(1985). To defeat the motion for summary judgment, the children would have to present competent evidence from which a factfinder could fairly conclude Isern gave no consideration for the assignments, thereby rebutting the presumption and demonstrating a disputed issue of material fact. *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 269, 261 P.3d 943 (2011) (summary judgment standards).

As outlined in the panel opinion, the children offered an affidavit from a paralegal employed by their lawyer. The affidavit averred the paralegal reviewed certain unspecified bank records and those records indicated no deposits into the trust's account. The affidavit fails to offer competent evidence the district court could consider in ruling on the executor's summary judgment motion. Affidavits used to support or oppose summary judgment must "set forth specific facts." *RAMA Operating Co. v. Barker*, 47 Kan. App. 2d 1020, Syl. ¶ 6, 286 P.3d 1138 (2012). The information in an affidavit also has to be admissible evidence at trial if the affiant were testifying. See *Skrzypczak v. Roman Catholic Diocese of Tulsa*, 611 F.3d 1238, 1244 (10th Cir. 2010) (party opposing summary judgment may not rely on "conclusory" affidavits but must set forth facts that would be admissible as evidence at trial). The paralegal could not have testified at trial about the content of bank records she reviewed. Moreover, the records were so inadequately described in the affidavit, especially as to the time period they covered, that the reported absence of deposits into the trust's account could not support a reasonable inference that no consideration had been received for the oil and gas assignments. Any inference would be impermissibly speculative. *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 978 (10th Cir. 2008) ("'affidavit evidence'" submitted in opposition to summary judgment may fail to create a material factual dispute if it is "'nonspecific . . . vague, conclusory, or self-serving'") (quoting *Piercy v. Maketa*, 480 F.3d 1192, 1197-98 [10th Cir. 2007]).

In short, the children failed to establish a factual predicate sufficient to overcome the presumption of consideration for the transfer of the assignments from the trust to

Isern. Their argument that the assignments were made without any consideration, rendering them fraudulent or void, lacked factual support in the summary judgment record. The district court, therefore, properly granted judgment to the executor on that basis. And that alone is sufficient to affirm the district court.

The executor also sought judgment on the grounds that the children's claims for fraud were barred by the governing statute of limitation and arguably by a statute of repose. The district court found the claims were time barred. I see no reason to address the merits of that part of the district court's ruling. And I offer no view on its soundness. Although the panel opinion outlines the timeliness issue and the district court's determination, I do not read the opinion as expressing a position on it, either.

I take the panel opinion to be consistent with what I have outlined here. Based on that assumption, I concur in the opinion.